**Robert WELCOME, Appellant,**

v.

**George JENNINGS, Appellee.**

No. S–2875.

Supreme Court of Alaska.

Oct. 13, 1989.

---

Peter C. Partnow, and Katheryn Bradley, Hellen, Partnow & Condon, Anchorage, and George W. Akers, Montgomery, Purdue, Blankinship & Austin, Seattle, Wash., for appellant.

A. Lee Petersen, Law Offices of A. Lee Petersen, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal involves a dispute between two claimants over the exclusive right to possess and extract minerals from certain overlapping mining claims. We affirm the decision of the superior court.

### I

In April 1983, George Jennings went to some mining claims near Petersville hoping to find work.[1] At the site, Jennings found lapsed stakes and location notices. The notices had been posted by the Bird Creek Mining Company, a business owned by Earl Ray and David Tallman. Jennings spent most of the summer on the claim and decided to locate the claim if no one else claimed the site by the end of summer.

---

**1.** The claims were located on federal land selected for acquisition by the state pursuant to the Alaska Statehood Act § 6(b), Pub.L. No. 85–508, 72 Stat. 339 (1958) (set out in a note preceding 48 U.S.C. § 21 (1982)). The United States Department of the Interior tentatively approved the selection in November 1986.

Jennings and Harry Dafoe staked and posted the claims in September or October. Jennings posted location notices in November and recorded them in February 1984.

Jennings returned to the claim from April to July 1984. During the summer of 1985, Jennings stayed at a nearby camp located below the staked claims. In 1986, Jennings again spent some time on the claim.

From 1984 to 1986, Jennings did not file affidavits of labor; however, he made sure that the claim was properly staked, replacing posts and location notices as needed.

In 1987, Jennings returned to the claim to find that Robert Welcome had posted stakes and location notices supporting an adverse claim to the mining location. Jennings replaced his stakes and location notices and performed labor on the claim.

Welcome asserts that he has the exclusive right to extract minerals from an area within Jennings' mining claims. Welcome's interest derives from a quitclaim deed from Alaska Mutual Bank in July 1986. The bank purportedly acquired the claim from Eugene Mobley by nonjudicial foreclosure.

According to Mobley, he discovered and staked several mining claims in late 1982. He testified that he posted and recorded location notices on January 3, 1983.

Mobley also testified that he and his family worked on the claims during the summer of 1983. Mobley filed a 1983 annual affidavit of labor. During the summer of 1984, Mobley claimed that Clay Hunter and Dave Tallman worked the claim for him. Tallman filed a 1984 annual affidavit of labor.

In 1984, Mobley pledged his interest in the mining claims as security for a loan from Alaska Mutual Bank. In 1985, after Mobley defaulted on the loan, the bank non-judicially foreclosed Mobley's interest

in the claims. The Bank performed annual labor and filed a claim of lien for the annual labor in 1985. In 1986, the bank quitclaimed its interest in the claims to Welcome. Welcome performed annual work and filed an affidavit of labor for 1987.

Jennings first learned of Mobley's interest in the claims in 1984, when Tallman came to the claims and showed him Mobley's location notices. In July 1985, Alaska Mutual Bank sent Jennings a letter informing him of the default on the loan secured by Mobley's interest in the claims.

In August 1986, Jennings filed a complaint to quiet title to the mining claims.[2] After a bench trial, Judge J. Justin Ripley quieted title in Jennings and awarded almost $9,750.00 in partial attorney's fees. Welcome appeals.

## II

Welcome asserts that several of the trial court's factual findings were clearly erroneous. A trial court's factual findings will not be set aside unless the reviewing court is left with a definite and firm conviction that a mistake has been made. *Kile v. Belisle*, 759 P.2d 1292, 1295 (Alaska 1988).

It is the trial court's function to judge the credibility of the witnesses and to weigh conflicting evidence. *Id.* The superior court noted that the outcome of this case turned on the relative credibility of Jennings and Mobley. If the court believed Jennings, then it must disbelieve Mobley, and vice-versa.

Regarding the credibility of Mobley, the trial court stated that "with all respect to that rather engaging gentleman, I find his testimony to be incredible." Both direct and cross-examination of Mobley produced what the court described as "inconsistency after inconsistency after inconsistency."[3] This statement is sup-

---

**2.** Jennings initially sued Alaska Mutual Bank; however, he amended the complaint to substitute Welcome as the named defendant.

**3.** Specifically, the court did not believe that on January 3, 1983, Mobley posted the location notices at the claim and recorded the claims in Palmer. Nor did the court believe that Mobley

and his family stayed at the claim during the summer of 1983. Instead, the court believed Jennings who stated that he spent the summer of 1983 on the claim and that he never saw Mobley or his family during that time.

ported by the evidence in the record; we conclude that the superior court's findings of fact were not clearly erroneous.[4]

### III

Welcome claims that Jennings may not bring an action to quiet title because he was not in possession of the mining claim. Jennings asserts that he is entitled to bring a quiet title action even though he did not perform annual assessment work on the claim.[5]

■ "A person in possession of real property ... may bring an action against another who claims an adverse estate or interest in the property for the purpose of determining the claim." AS 09.45.010. Thus, in order to bring an action to quiet title, the plaintiff must allege and prove that he or she was in possession of the claim.[6] *Shope v. Sims,* 658 P.2d 1336, 1339 (Alaska 1983); AS 09.45.010. Possession of a mining claim is evidenced by satisfying

statutory requirements regarding location and performance of annual assessment work.[7] *Shope,* 658 P.2d at 1339.

■ A person acquires the exclusive right to possess and extract minerals on state land by discovery, location, and recording. AS 38.05.195.[8] In order to preserve the exclusive right of possession and extraction, the locator must perform annual labor and record an annual affidavit of labor.[9]

■ Welcome contends that Jennings is not in possession of the claims because Jennings did not meet the annual labor requirements of AS 38.05.210; therefore, Welcome reasons that Jennings is not entitled to bring an action to quiet title.

We disagree. When a mining claim is located on state-selected land still owned by the federal government, the annual labor and affidavit requirements are suspended pending tentative approval of the selection. 11 AAC 86.115(c).[10] Thus, Jennings ful-

---

4. Welcome also claims that the trial court improperly considered Mobley's motives in staking the claim and that the trial court erred by not requiring Jennings to meet his burden of proof. Both of these arguments are primarily based on Welcome's assertion that the trial court's factual findings were clearly erroneous. The trial court's findings were not clearly erroneous; therefore these arguments are without merit. Welcome further claims that Jennings failed to record the claims within ninety days after posting the notice as required by AS 38.05.195. Welcome did not properly raise this issue. *See Oceanview Homeowners Ass'n v. Quadrant Construction & Engineering,* 680 P.2d 793, 797 (Alaska 1984) (generally an issue omitted from an appellant's statement of points on appeal will not be considered by this court). Therefore, we do not address this issue herein. *See* AS 27.10.-060.

5. This issue involves a question of law, subject to the independent judgment standard of review. *Kile v. Belisle,* 759 P.2d at 1297 n. 15.

6. A plaintiff not in possession must sue in ejectment. *Shope,* 658 P.2d at 1339; AS 09.45.630.

7. Contrary to Welcome's assertion, Jennings' complaint was sufficient to allege possession.

8. AS 38.05.195 provides in part:
Rights to deposits of minerals ... on state land that is open to claim staking may be acquired by discovery, location and filing as prescribed in AS 38.05.185—38.05.275. The locator has the exclusive right of possession

and extraction of the minerals ... lying within the boundaries of the claim.... A location shall be distinctly marked on the ground ... and a notice of location shall be posted on the claim.... Within 90 days after the date of posting the notice of location on the claim, the locator shall file for record in the recording district where the claim is located a certificate of location.... Annual labor shall be performed and statements of annual labor recorded as prescribed in AS 38.05.210—38.-05.235.
*See also* 11 AAC 86.105, .200—.215.

9. AS 38.05.210 provides in part:
(a) Labor shall be performed or improvements made annually on or for the benefit or development of each mining claim on state land....
(b) During the year in which the performance of annual labor is required or within 90 days after the close of that year, the owner of the mining claim or some other person having knowledge of the facts shall ... record with the recorder of the district in which the claim is located a signed statement setting out the information ... concerning the annual labor of the preceding year....

10. 11 AAC 86.115(c) provides in part:
The provisions of AS 38.05.210—38.05.240 do not apply to locations made on state-selected land until the state receives tentative approval of the selection from the federal government. The first labor year for a min-

filled the state law requirements to maintain the claims pending tentative approval.

We believe that Jennings' compliance with statutory requirements under AS 38.-05.195 is sufficient to establish constructive possession of the claims and permit him to maintain a quiet title action.[11] Therefore, we affirm the decision of the superior court on this issue.

### IV

Welcome argues that the trial court erred in rejecting Welcome's assertions that Jennings' claim was barred by the doctrines of waiver, estoppel or laches because Jennings failed to object to the nonjudicial foreclosure. This argument stems from a fundamental misunderstanding of the effect of a nonjudicial foreclosure on the interests of a third party such as Jennings.

The purchaser at a nonjudicial foreclosure sale acquires the interest of the party who executed the deed of trust. AS 34.20.090(a).[12] The purchaser has a right to possess the premises superior to that of the party who executed the deed of trust, as well as any person claiming through that party. AS 34.20.090(b).

■ In this case, Alaska Mutual Bank acquired all of Mobley's interest in the claims. If Jennings asserted an interest *deriving* from Mobley, AS 34.20.090(b) would entitle the bank to possession. However, Jennings asserts a claim *adverse* to that of Mobley; therefore, the foreclosure

had no effect on the continuing validity of Jennings' interest in the mining claims.

### V

Finally, Welcome asserts that the trial court's award of attorney's fees was excessive. The trial court has wide discretion in awarding attorney's fees; we will not reverse an award unless it is "manifestly unreasonable." *Alaska Placer Co. v. Lee,* 553 P.2d 54, 63 (Alaska 1976).

■ The trial court awarded Jennings $9,748.80 for his attorney's fees, approximately 60% of the actual charge. When making the award the court noted that Jenning's actual fees were reasonable. The court also noted that Welcome's case was quite weak, and that he had been put on notice that a premium might be paid if he lost.[13] We conclude that the award of attorney's fees was not manifestly unreasonable.

AFFIRMED.

ing claim ... made on state-selected land begins at noon on the first September 1 after the date the federal government tentatively approves the selection.

11. We note that no third party asserted actual possession of the claims.

12. AS 34.20.090 provides in part:
(a) The sale and conveyance transfers all title and interest that the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest that party may have acquired before the sale, and the party executing the deed of trust or the heirs or assigns of that party have no right or privilege to redeem the property, unless the deed of trust so declares.

(b) The purchaser at a sale and the heirs and assigns of the purchaser are, after the execution of a deed to the purchaser by the trustee, entitled to the possession of the premises described in the deed as against the party executing the deed of trust or any other person claiming by, through or under that party, after recording the deed of trust in the recording district where the property is located.

13. When denying Jennings' pre-trial motion for summary judgment, Judge Joan M. Katz noted that, "[Welcome] is put on notice that a much more substantial showing will be required at trial and substantial attorney's fees may be imposed if defendant's position is ultimately found to be frivolous."