WINFREE, Justice,
concurring.
I agree with the court's conclusion that the facially short-term and revocable land use permits issued by the State of Alaska, Department of Natural Resources (DNR) to Pebble Limited Partnership (Pebble) are disposals of land requiring public notice under article VIII, section 10 of the Alaska Constitution. But reaching that conclusion by analyzing whether facially short-term and revocable permits are, functionally, long term and irrevocable seems ill-founded and far more complicated than necessary.[1] This analysis seems likely to lead to extensive litigation over mineral exploration permits, as was the case here, despite the court's suggestion that the analysis generally should be amenable to summary resolution. It is difficult to see how an as-applied challenge to the constitutionality of the State's issuance of a mineral exploration permit can be resolved in summary fashion.
A simpler analysis can be accomplished without relying on the permit's facial or functional temporal quality or revocability, or on the necessarily arbitrary conclusion that a particular mining project has become such an unstoppable financial engine it likely would overcome the will of State employees charged with determining whether issuing or revoking a permit is in the State's best interest. This analysis relies on a mineral exploration permit's appurtenance to an existing mining claim, a property interest acquired from the State through article VIII, section 11 of the Alaska Constitution:
Discovery and appropriation shall be the basis for establishing a right in those min *1065 erals reserved to the State.... Prior discovery, location, and filing, as prescribed by law, shall establish a prior right to these minerals and also a prior right to permits, leases, and transferable licenses for their extraction. Continuation of these rights shall depend upon the performance of annual labor, or the payment of fees, rents, or royalties, or upon other requirements as may be prescribed by law. Surface uses of land by a mineral claimant shall be limited to those necessary for the extraction or basic processing of the mineral deposits, or for both.
Alaska Statute 88.05.195(a) further explains that "[IrJights to deposits of minerals . in or on state land that is open to claim staking may be acquired by discovery, location, and recording.... The locator has the exclusive right of possession and extraction of the minerals ... lying within the boundaries of the claim."[2] The locator also has the right to "use the surface of the location only to the extent necessary for the prospecting for, extraction of, or basic processing of mineral deposits."[3] A mining claim is a property interest in State land, although it does not include an absolute right to explore for or mine minerals; a claim is contingent on DNR's "permission to mine."[4] But a mining claim holder has the right to use the claim's surface estate[5] and may preclude concurrent use of that surface estate, subject to DNR's authority to issue the concurrent user a land use permit or other written authorization.[6] A mining claim owner must, however, perform annual labor,[7] pay annual rent,[8] and obtain a permit before engaging in intensive mineral exploration.[9]
A mining claim owner's permit application must include a detailed "map at a sufficient scale showing the general location of all activities and routes of travel of all equipment" as well as "a description of the proposed activity, any associated structures, and the type of equipment that will be used."[10] If DNR issues a permit it "is revocable for cause for a violation of a permit provision ... and is revocable at will if [DNR] determines that revocation is in the state's interest." [11] A claim owner, among others, has the right *1066 to appeal DNR's decision to issue, deny, or revoke a permit.[12]
We have not had much occasion to consider the tension between (1) a mining claim holder's mineral property rights and associated right to use the surface estate, and (2) the State's regulatory restrictions on the mining claim holder's ability to use the surface estate for exploration and development.[13] I am not suggesting that a mining claim holder has a property interest in an exploration permit or that DNR must issue an exploration permit in every situation, but it does seem to me that if:; (1) a mining claim holder has a constitutionally created property interest that can be explored and developed only by using the State's land surface; (2) the mining claim holder has a preferential right to reasonable use of the State's land surface; (8) the mining claim holder requests a permit for intensive use of the land surface to explore and develop its mineral property; and (4) DNR determines that it is in the State's best interest to allow intensive use of the State's land surface for this purpose in an appropriate manner, then the permit for the surface land use is effectively a disposal of a State land interest requiring public notice under the Alaska Constitution.[14]

. The court relies on the functional irrevocability tests adopted in Northern Alaska Environmental Center v. State, Department of Natural Resources; in that case we concluded a statutory best interest finding was required because the permit at issue was functionally irrevocable. 2 P.3d 629, 637-39 (Alaska 2000). When adopting the tests in Northern Alaska we relied on a federal case, Wilderness Society v. Morton, where the D.C. Circuit concluded that a special land use permit issued in relation to Trans-Alaska Pipeline construction was long term and functionally irrevocable. 479 F.2d $42, 870-75 (D.C.Cir.1973). In Northern Alaska, noting the "broad constitutional mandate to protect the public interest in dispositions of state land" and applying rules of statutory interpretation, we were able to determine that a permit was a disposal of an interest in land before addressing functional irrevocability. 2 P.3d at 634-37 (construing interest in land to include permits and licenses and construing disposals to include "property interests of limited duration"). We adopted and applied the functional irrevocability tests only because we were faced with the assertion that the permit qualified for an exception to the best interest finding required under the Alaska Land Act. Id. at 637-39; see AS 38.05.035(e)(6)(C) (exempting "a permit or other authorization revocable by the commissioner" from written best interest finding requirement).

. See also Welcome v. Jennings, 780 P.2d 1039, 1042 (Alaska 1989) ("A person acquires the exclusive right to possess and extract minerals on state land by discovery, location, and recording."); id. ("Possession of a mining claim is evidenced by satisfying statutory requirements regarding location and performance of annual assessment work.").

. 11 Alaska Administrativé Code 86.145(a)(1) (2014). (AAC)

. See Beluga Mining Co. v. State, Dep't of Natural Res., 973 P.2d 570, 575-76 (Alaska 1999) (explaining company "had property rights in its claims, but it had no right to mine; its mining 'rights' were prospective and contingent").

. See Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co., 299 P.3d 148, 165 (Alaska 2012) ("'Under Alaska law, a person who acquires mining rights to located claims also has rights to make use of the corresponding surface estate. ...").

. See 11 AAC 96.010(a)(3) ("On state land, a permit or other written authorization is required for ... an activity on land subject to a mineral or land estate property interest by a person other than the holder of a property interest ... if the parties cannot agree on what constitutes reasonable concurrent use."); of. Shope v. Sims, 658 P.2d 1336, 1339 (Alaska 1983) (stating possessor of mining claim has equitable claim for quiet title and may have legal claim for ejectment "against anyone who enters on it").

. See AS 38.05.210(a) ("Labor shall be performed or improvements made annually on or for the benefit or development of each mining claim, leasehold location, and mining lease on state land except that, where adjacent claims, leasehold locations, or mining leases are held in common, the expenditure may be made on any one claim, leasehold location, or mining lease.").

. See AS 38.05.211(a) ('The holder of each mining claim, leasehold location, prospecting site, and mining lease, ... shall pay, in advance, rental for the right to continue to hold the mining claim, leasehold location, prospecting site, and mining lease. ...").

. See 11 AAC 96.010, .020.

. 11 AAC 96.030(a).

. 11 AAC 96.040(a). It is not clear to me that we have considered the meaning of "at will" outside the employment context. See, e.g., Pitka v. Interior Reg'l Hous. Auth., 54 P.3d 785, 789 (Alaska 2002) ("At-will employees may be terminated for any reason that does not violate the implied covenant of good faith and fair dealing.... Breach of the implied covenant may be either subjective or objective.... Disparate em *1066 ployee treatment, terminations on unconstitutional grounds, and firings that violate public policy are examples of actions that may violate the objective aspect of the implied covenant." (footnotes omitted)). Black's Law Dictionary defines "at will" as "Subject to one's discretion; as one wishes or chooses; esp. (of a legal relationship), able to be terminated ... by either party without cause[.]" Brack's Law Dictionary 149 (9th ed.2009).

. See 11 AAC 96.110 ("An eligible person affected by a decision issued under this chapter may appeal that decision in accordance with 11 AAC 02."). Neither the relevant statutes nor regulations expressly set out the State's required considerations when issuing a mineral exploration permit. But if a permit may be revoked "at will" when DNR determines it is in the State's best interest, then presumably a permit will be issued only if DNR determines it is in the State's best interest.

. Cf. Beluga Mining Co. v. State, Dep't of Natural Res., 973 P.2d 570, 574-176 (Alaska 1999) (holding that injunction delaying claim holder's ability to receive permits was not a taking because the company had no right to mine; rather, claim holder's property interest was in the underlying claims).

. Intensive use of State land surface for mineral exploration and development exceeds use allowed without a permit. See 11 AAC 96.020 (enumerating low-intensity uses, including prospecting and mining without heavy machinery, allowed on State land without permit); Alyeska Ski Corp. v. Holdsworth, 426 P.2d 1006, 1011 (Alaska 1967) (explaining that article VIII, section 10 of the Alaska Constitution "reflects the framers' recognition of the importance of our land resources and of the concomitant necessity for observance of legal safeguards in the disposal or leasing of state lands"). But under virtually any standard, the permit here allowed intensive use of State land surface through drilling and removal of core samples, seismic explosions, and waste disposal (in drill casings, enclosed drilling waste, and separate waste pits).