NORTHERN ALASKA ENVIRON-
MENTAL CENTER and Sier-
ra Club, Appellants,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, and John T. Shively, in his official capacity as Commissioner thereof, and Golden Valley Electric Association, Appellees.

No. S–9367.

Supreme Court of Alaska.

June 2, 2000.

Thomas S. Waldo and Eric Jorgensen, Earthjustice Legal Defense Fund, Juneau, and Steven C. Davis, Seattle, Washington, for Appellants.

Mary Ann Lundquist, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska.

John J. Burns and Thomas R. Manniello, Borgeson & Burns, PC, Fairbanks, and Peter H. Haller and Leslie R. Schenck, Ater

Wynne, LLP, Seattle, Washington, for Appellee Golden Valley Electric Association.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

The Department of Natural Resources granted Golden Valley Electric Association a right-of-way permit for the construction of an electric transmission line across sixty-five miles of state land between Healy and Fairbanks. DNR claims that this permit is exempted from the best interest finding requirement of AS 38.05.035(e) due to its revocable nature. Because the permit is not revocable for purposes of AS 38.05.035(e)(6)(C), we reverse and remand to DNR for a best interest finding.[1]

## II. FACTS & PROCEEDINGS

In 1993 the legislature appropriated $43.2 million for the construction of a second electric transmission line between Healy and Fairbanks (Northern Intertie).[2] In August 1996 Golden Valley Electric Association (Golden Valley), a not-for-profit electric cooperative, applied to the Department of Natural Resources (DNR), Division of Lands for a right-of-way permit to build the Northern Intertie. In its permit application, Golden Valley sought a right-of-way 150 feet wide and sixty-five miles long, encompassing an area of approximately 1,200 acres.

Because potential routes for the Northern Intertie crossed federal lands, Golden Valley also sought approval from the Bureau of Land Management (BLM). BLM prepared an Environmental Impact Statement for the proposed intertie that analyzed at least seven alternative routes. The Final Environmental Impact Statement, issued in June 1998, recommended construction of the Northern Intertie along the "Rex/South" route.

In that same month, DNR issued its proposed decision, which also recommended construction of the Northern Intertie along the Rex/South route. DNR explicitly relied on the Final Environmental Impact Statement as the basis for its proposed decision.[3] Following a month-long comment period, DNR issued its decision, which recommended granting Golden Valley a thirty-year right-of-way permit along the Rex/South route. Northern Alaska Environmental Center (Northern Center) appealed DNR's decision to the Commissioner of Natural Resources. After briefing and oral arguments, the commissioner remanded the Northern Intertie decision to DNR to address fully DNR's role in the environmental assessment and route selection processes.

On February 22, 1999, DNR issued its decision on remand. DNR concluded that the right-of-way permit was specifically exempted from the AS 38.05.035(e) best interest finding requirement[4] because: (1) it was "a permit or other authorization revocable by the commissioner,"[5] and (2) it did not dispose of an interest in land. Instead, DNR determined that AS 38.05.850(a) governed the issuance of the permit: DNR "shall give

1. On December 17, 1999, after consideration of the case on an expedited basis, we issued an order reversing the decision of the Commissioner of the Department of Natural Resources and remanding for a best interest finding. We stated in our order that a full opinion of the court would follow.

2. *See* ch. 19, § 1, SLA 1993.

3. Northern Alaska Environmental Center argues that DNR exercised very little independent analysis or judgment in selecting this alternative, but instead blindly followed BLM's decisions. Northern Center also questions the sufficiency

and late revelation of DNR's stated basis for selecting the Rex/South route. We need not address these arguments here but note that they may be relevant to the best interest determination.

4. Alaska Statute 38.05.035(e) provides: "Upon a written finding that the interests of the state will be best served, the director [of the Division of Lands] may, with the consent of the commissioner, approve contracts for the sale, lease, or other disposal of available land, resources, property, or interests in them."

5. AS 38.05.035(e)(6)(C).

preference to that use of the land that will be of greatest economic benefit to the state and the development of its resources."[6] In making this determination, DNR considered whether any competing uses of the Rex/South route would bring greater economic benefit. DNR ultimately concluded that the "Northern Intertie [gave] the greatest economic benefit to the state" and authorized the issuance of the right-of-way permit.

Consistent with this decision on remand, DNR issued the right-of-way permit to Golden Valley, effective February 22, 1999. The permit, entitled "Land Use Permit Under AS 38.05.850," contains the following provision: "This permit is not a property right. It is a temporary authorization, revocable by the state with or without cause. This permit is effective beginning February 22, 1999, and ending on February 21, 2004, unless sooner terminated at the state's discretion." Further, Golden Valley's "right-of-way permit will be issued for a term of thirty years and will be subject to renewal."

Northern Center requested reconsideration of DNR's decision on remand. The commissioner rejected this request on March 26, 1999. Northern Center and Sierra Club filed an appeal in superior court. The superior court affirmed DNR's grant of the right-of-way permit.

Northern Center and Sierra Club appeal.

## III. DISCUSSION

### A. Standard of Review

■■■■ When the superior court acts as an intermediate court of appeal, we give no deference to its decision.[7] Rather, we review the merits of the administrative agency determination directly.[8] The standard of review for agency decisions of law depends on whether agency expertise is implicated. We apply the "reasonable basis" test to questions of law involving agency expertise but apply the "substitution of judgment" test where no expertise is involved.[9] The substitution of judgment standard thus applies where the agency's expertise provides little guidance to the court or where the case concerns "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and expertise."[10]

■■■■ The parties disagree about whether DNR's expertise is implicated by its interpretation of AS 38.05.035(e). The statutory interpretations contested on appeal are: (1) whether the right-of-way permit is a "disposal" of an "interest in land" within the meaning of AS 38.05.035(e) and (2) whether the permit is "revocable" within the meaning of AS 38.05.035(e)(6)(C).[11]

We review the agency's interpretation of such non-technical statutory terms under the substitution of judgment standard.[12] In State v. Aleut Corp.,[13] we reviewed whether the Division of Lands had complied with AS

---

6. AS 38.05.850(a).

7. See Usibelli Coal Mine, Inc. v. State, Dep't of Natural Resources, 921 P.2d 1134, 1141 (Alaska 1996); Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co., 746 P.2d 896, 903 (Alaska 1987).

8. See Usibelli, 921 P.2d at 1141; Tesoro, 746 P.2d at 903.

9. See Usibelli, 921 P.2d at 1141 (quoting Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992)).

10. Kelly v. Zamarello, 486 P.2d 906, 916 (Alaska 1971); see also Hodges v. Alaska Constructors, Inc., 957 P.2d 957, 960 (Alaska 1998); Konecky v. Camco Wireline, Inc., 920 P.2d 277, 280 n. 8 (Alaska 1996) (where the "issue to be resolved turns on statutory interpretation rather than the formulation of fundamental policy involving particularized expertise of administrative personnel,

... we shall independently consider the meaning of the statute"); Earth Resources Co. v. State, Dep't of Revenue, 665 P.2d 960, 965 n. 8 (Alaska 1983) (issues of statutory construction fall "within the special competency of this court").

11. Because we decide this case under AS 38.05.035(e), we need not address the parties' arguments regarding the interpretation of AS 38.05.850(a).

12. In contrast, where the agency interprets technical or esoteric terminology, we have applied reasonable basis review. See, e.g., Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 20 (Alaska 1969) (applying reasonable basis review to DNR's interpretation of "commercial quantities" of oil or gas for purposes of AS 38.05.180(a) "in light of the policy considerations and the particularized complexity of the subject matter").

13. 541 P.2d 730 (Alaska 1975).

38.05.305 prior to conducting a public land auction.[14] The Division of Lands contended that the reasonable basis test applied to its interpretations of "adjacent to," "other organized community," and "local authorized planning agencies." [15] In rejecting the reasonable basis approach, we concluded:

> The terms of AS 38.05.305 are not technical, and mere familiarity in their application by the Division of Lands does not render that agency any better able to discern the intent of the legislature than the courts. We will therefore apply our own independent judgment as to whether the agency's interpretation complies with the legislature's intent.[16]

In light of this precedent, we conclude that the interpretation of the terms "disposal," "interest in land," and "revocable" does not implicate agency expertise or broad policy formulations. Thus, we apply the substitution of judgment standard to DNR's interpretation of these non-technical terms.[17]

B. *Because the Northern Intertie Permit Is Not Functionally Revocable, AS 38.05.035(e) Requires a Best Interest Finding.*

DNR determined that a best interest finding was not required under AS 38.05.035(e) because (1) the grant of the right-of-way permit is not a "disposal" of an "interest in land," and (2) the right-of-way permit is "re-vocable" and therefore exempted under AS 38.05.035(e)(6)(C). Northern Center challenges both determinations.

■ This case presents issues of pure statutory interpretation. "Statutory construction begins with an analysis of the language of the statute construed in view of its purpose." [18] We construe statutes "to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others." [19] Thus, we construe terms according to their common usage, unless a term has acquired a peculiar meaning due to statutory definition or judicial construction.[20]

1. *DNR's grant of a right-of-way permit is a "disposal" of an "interest in land" under AS 38.05.035(e).*

■ Alaska Statute 38.05.035(e) provides: "Upon a written finding that the interests of the state will be best served, the director [of the Division of Lands] may, with the consent of the commissioner, approve contracts for the sale, lease, or other disposal of available land, resources, property, or interests in them."

Although DNR here asserts a contrary position, we note at the outset that DNR regulations—namely 11 AAC 55.040—specifically indicate that grants of rights-of-way or easements for electric utility lines are disposals of an interest of land under AS

**14.** *See id.* at 736.

**15.** *Id.*

**16.** *Id.* at 737.

**17.** We have similarly applied the substitution of judgment standard to other DNR interpretations of the Alaska Land Act, AS 38.05. *See, e.g., AU Int'l, Inc. v. State, Dep't of Natural Resources,* 971 P.2d 1034, 1037, n. 10 (Alaska 1999) (applying standard to question of whether mining claim owner was deemed to have "abandoned" its claims for purposes of AS 38.05.265); *Kachemak Bay Watch, Inc. v. Noah,* 935 P.2d 816, 824 (Alaska 1997) (applying independent judgment in determining which DNR actions under AS 38.05.855 were required prior to considering permit applications); *Tulkisarmute Native Community Council v. Heinze,* 898 P.2d 935, 940 (Alaska 1995) (interpreting statutory requirements for granting water rights permits involves no agency expertise and thus is subject to the substitution of judgment standard); *Longwith v. State, Dep't of Natural Resources,* 848 P.2d 257, 263 n. 5 (Alaska 1993) (reviewing DNR interpretation of statutory requirements under 38.05.035 for the grant of preference rights); *Alaska Survival v. State, Dep't of Natural Resources,* 723 P.2d 1281, 1288 (Alaska 1986) (holding AS 38.04.065 requires regional planning prior to land disposal); *Moore v. State,* 553 P.2d 8, 25–26 (Alaska 1976) (applying substitution of judgment standard in determining whether AS 38.05.305 applied to oil and gas leases).

**18.** *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1017 (Alaska 1998) (citations omitted).

**19.** *City of Dillingham v. CH2M Hill Northwest, Inc.,* 873 P.2d 1271, 1276 (Alaska 1994) (citations omitted).

**20.** *See McDowell v. State,* 957 P.2d 965, 970 (Alaska 1998).

38.05.035(e) subject to the best interest finding requirement.[21] Notwithstanding this important admission, we will address the parties' arguments in turn.

 First, DNR maintains that a revocable right-of-way permit is not an "interest in land."[22] Indeed, both the permit itself and the decision on remand state that the permit does not convey an interest in land. But focusing on substance rather than form, we note that licenses, such as revocable land use permits,[23] are generally considered interests in land.[24] Courts have generally denied licenses the status of interests in land for the limited purposes of constitutional protections[25] and compliance with the Statute of Frauds.[26] Given the broad constitutional mandate to protect the public interest in dispositions of state land,[27] we construe "interests in land" to include interests such as licenses. .

 The parties also disagree about whether the grant of a right-of-way permit is a "disposal" for purposes of AS 38.05.035(e). Northern Center argues that the existence of a specific exemption in AS 38.05.035(e)(6)(C) for permits indicates that the definition of disposal would include permits in the absence of such an exemption. Indeed, a leading treatise on statutory interpretation confirms this position: "statutory exceptions exist only to exempt something that would otherwise be covered."[28] This rule comports with our rules of statutory interpretation:

It is an established principle of statutory construction that all sections of an act are to be construed together so that all have meaning and no section conflicts with another. Further, where one section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible.[29]

These rules of statutory interpretation support Northern Center's argument that revocable permits are included within the term "disposal."

 DNR contends that the grant of the right-of-way permit is not a disposal because of its limited duration and subject matter. First, DNR claims that the general and technical meanings of disposal—as defined in

21. This regulation permits certain disposals of interests in land prior to classification, including "the granting of a right-of-way or easement for a use that has been determined in the finding required by AS 38.05.035(e) to have a minor or insignificant effect on the land and resources; such uses might include ... (ii) a telephone, electric, or other utility line less than 1,500 feet in length." 11 AAC 55.040(i)(6).

22. *See* 1983 Informal Op. Att'y Gen. 4412, 4414 (Dec. 15, 1983) (stating that revocable use permit "did not convey an interest in land"); *see also* *Cissna v. Stout*, 931 P.2d 363, 368 (Alaska 1996) ("While opinions of the attorney general are entitled to some deference, they are not controlling on matters of statutory interpretation.").

23. A permit to use land revocable at the will of the grantor is generally considered a license. *See* Restatement of Property §§ 514, 519 (1966); Jon W. Bruce & James W. Ely, Jr., The Law of Easements & Licenses in Land ¶¶ 9.02[4], 10.06[1] (1988); 4 Powell on Real Property § 34.25 (1997); 8 Thompson on Real Property § 64.02(a) (1994); 3 Tiffany, Real Property § 833 (1939).

24. *See* Restatement of Property § 512 cmt. c (1944) ("A privilege to use certain land constitutes an interest in that land."); Thompson on Real Property § 64.02(b); *see also Hubbard v.*

*Brown*, 50 Cal.3d 189, 266 Cal.Rptr. 491, 785 P.2d 1183, 1186–87 (1990) (recognizing that license may be an interest in land for some purposes, such as taxation and statutory tort immunity, but not for other purposes, such as eminent domain).

25. *See Hubbard* 266 Cal.Rptr. 491, 785 P.2d at 1186 (use permit not an interest in land for eminent domain purposes); 8 Thompson on Real Property § 64.02(b).

26. *See Forge v. Smith*, 458 Mich. 198, 580 N.W.2d 876, 883 (1998) (licenses need not comply with Statute of Frauds); 8 Thompson on Real Property § 64.02(b).

27. *See* Alaska Const. art. VIII, §§ 1, 10; *see also* Preamble of Alaska Land Act, ch. 169, SLA 1959; *Alyeska Ski Corp. v. Holdsworth*, 426 P.2d 1006, 1011 (Alaska 1967) (Article VIII, § 10 "reflects the framers' recognition of the importance of our land resources and of the concomitant necessity for observance of legal safeguards in the disposal or leasing of state lands.").

28. 2A Norman J. Singer, Sutherland Statutory Construction § 47.11 at 166 (5th ed.1992).

29. *In re Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978).

dictionaries, case law, and Alaska Attorney General Opinions—require a final and irreversible conveyance of property rights.[30] Under the very terms of AS 38.05.035(e), however, a disposal need not be a permanent conveyance of property rights. Alaska Statute 38.05.035(e) provides that the Division of Lands can, "with the consent of the commissioner, approve contracts for the sale, *lease, or other disposal* of available land, resources, property, or interests in them." By using this language the legislature manifested its intent that "leases" be included in its definition of a "disposal." According to the doctrine of *ejusdem generis*, when a general word follows a list of specific persons or things, the general word will be construed to apply only to persons or things of the same type as those specifically listed.[31] A "lease" is generally defined as an "[a]greement under which the owner gives up possession and use of his property . . . *for definite term* and at end of term owner has absolute right to retake, control and use property."[32] Thus, under the principal of *ejusdem generis*, the term "disposal" as used in AS 38.05.035(e) is not limited to final and permanent conveyances of property rights but rather includes property interests of limited duration such as permits and leases.[33]

■ Second, DNR argues that the grant of a right-of-way permit is not a disposal because it does not convey an exclusive possessory interest. DNR contends that, under the *ejusdem generis* principle, the specific terms "sale" and "lease" require the general term "disposal" to encompass only transfers of possessory interests. But leases do not necessarily convey such interests. Certain leases—including leases of tideland, shoreland, and submerged land;[34] grazing leases;[35] and mining leases[36]—convey nonexclusive possessory interests. A right-of-way permit for a transmission line similarly constitutes a nonexclusive possessory interest. For ·example, the state could concurrently grant a grazing lease on the Intertie right-of-way. Because both leases and right-of-way permits may convey nonexclusive interests, DNR's *ejusdem generis* argument fails.

Further, the legislature has clearly indicated that disposals under the Alaska Land Act may convey a very narrow bundle of interests. Former subsection (a) of AS 38.05.321 provided: "The sale, lease or other disposal of state land classified as agricultural land transfers only rights for agricultural purposes, and all other interests in the land remain with the state unless otherwise required by law."[37] Thus, the limited nature of the rights transferred by the state does not remove the issuance of a right-of-way permit from the scope of the term "disposal."

■ DNR also argues that reading "disposal" to include right-of-way permits would create an impermissible inconsistency in the statutory framework. Under AS 38.05.035(e), disposals require the approval of the Commissioner of Natural Resources. But under AS 38.05.850(a), rights-of-way, easements, and permits may be issued "without the prior approval of the commissioner."

---

**30.** *See* Webster's New Collegiate Dictionary (1975) (defining "dispose of" as "to deal with conclusively," "to transfer to the control of another," and "to get rid of"); Black's Law Dictionary 471 (abr. 6th ed.1990) (defining "dispose of" as "to exercise finally in any manner, one's power of control over; to pass into the control of someone else; to alienate, relinquish, part with, or get rid of"); *Assiniboine & Sioux Tribes v. Nordwick*, 378 F.2d 426, 429 (9th Cir.1967), *cert. denied*, 389 U.S. 1046, 88 S.Ct. 764, 19 L.Ed.2d 838 (1968) (describing a disposal as "that final and irrevocable act by which the right of a person, purchaser, or grantee, attaches, and the equitable right becomes complete to receive the legal title by a patent or other appropriate mode of transfer") (cited in 63C Am.Jur.2d Public Lands § 40 (1997)); 1980 Informal Op. Att'y Gen. 6402, 6403 at 5 (Dec. 22, 1980) (stating that "disposal" suggests irreversibility).

**31.** *See State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1046 n. 8 (Alaska 1996) (quoting Black's Law Dictionary (6th ed.1990)).

**32.** Black's Law Dictionary 615 (abr. 6th ed.) (emphasis added).

**33.** *Cf.* AS 38.05.810(g) (providing that the state retains reversionary interest when it disposes of state land for public or charitable use).

**34.** *See* AS 38.05.075(c)-(d).

**35.** *See* 11 AAC 60.130.

**36.** *See* AS 38.05.255.

**37.** Ch. 1, § 7, FSSLA 1996.

DNR argues that these conflicting provisions indicate that right-of-way permits are not included under AS 38.05.035(e).

■ Northern Center contends that this framework "favors overlapping applicability, not mutual exclusivity." We agree. In order to give effect to each statutory provision, we interpret AS 38.05.850(a) as exempting certain disposals of interests in land—permits, rights-of-way, and easements granted for particular enumerated uses—from the approval requirement.[38] Alaska Statute 38.05.850 does not serve to exclude these grants from the purview of AS 38.05.035(e) altogether. We note that sales of an interest in land worth no more than $50,000 and leases with an average rental value of less than $5,000 similarly do not require commissioner approval under AS 38.05.035(c)(4) but they are still subject to the best interest finding requirement. Applying principles of statutory construction, we conclude that AS 38.05.850 exempts right-of-way permits from the approval requirement but does not exempt such disposals from the AS 38.05.035(e) best interest finding requirement.

In conclusion, we hold that the issuance of a right-of-way permit is a disposal of an interest in land for purposes of AS 38.05.035(e).

2. *The right-of-way permit is not revocable for purposes of AS 38.05.035(e)(6)(C)'s exception.*

■ Although we conclude that the grant of a right-of-way permit is considered a dis-

posal of an interest in land for purposes of AS 38.05.035(e), DNR need not make a best interest finding if the permit is deemed revocable. Under AS 38.05.035(e)(6)(C), a written best interest finding is not required before the approval of "a permit or other authorization revocable by the commissioner."

Northern Center does not dispute that the right-of-way permit is revocable by its own terms. Rather it contends that the cost and magnitude of the construction, as well as the claimed importance of the Healy–Fairbanks intertie, render the permit not "revocable in a practical, real world sense."

In *Wilderness Society v. Morton*,[39] the D.C. Circuit encountered a similar argument. Environmental groups challenged the Department of Interior's intended grants of rights-of-way and special land use permits for the construction of the Alaska pipeline. Because section 28 of the Mineral Leasing Act of 1920[40] limited pipeline rights-of-way to twenty-five feet on either side, Alyeska Pipeline Service Company applied for a permit for the additional area needed for pipeline construction.[41] In its permit application, Alyeska recognized "that any authorization to use the space ... will remain at all times revocable at will by the government, without cause or justification."[42] Plaintiffs claimed that this permit would violate 43 C.F.R. § 2920.3(a)(1)[43] because it would not truly be "revocable."[44]

Judge J. Skelly Wright, writing for the majority, discussed two tests for revocability.

---

**38.** A right-of-way is a class of easement. *See Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 n. 5 (Alaska 1977); Jon W. Bruce & James W. Ely, Jr. The Law of Easements & Licenses in Land ¶ 1.06[1] (1988).

An easement is an "interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specified limited purpose." Black's Law Dictionary 527 (7th ed.1999). *See also* Restatement of Property § 450, cmts. a-d; 4 Powell on Real Property § 34.02[1]; Thompson on Real Property § 60.02; AS 44.88.900(12) (defining "real property" as "land and rights and interests in land, including, without limitation, interests less than full title such as easements, uses, leases, and licenses").

**39.** 479 F.2d 842 (D.C.Cir.1973) (en banc).

**40.** 30 U.S.C. § 185.

**41.** *See Wilderness Society*, 479 F.2d at 848–53. Alyeska sought the permit for "additional access and construction space" parallel to the right-of-way. *Id.* at 850. This permit in effect would have widened the right-of-way 11 feet on one side and 35 feet on the other. *See id.*

**42.** *Id.* at 851.

**43.** 43 C.F.R. § 2920.3(a)(1)(1972) provided: "A special land use permit will be revocable in the discretion of the authorized officer at any time, upon notice, if in his judgment the lands should be devoted to another use, or the conditions of the permit have been breached." *See Wilderness Society*, 479 F.2d at 870.

**44.** *See Wilderness Society*, 479 F.2d at 870.

The first test "focuses on the likelihood of revocation as opposed to the mere legal right to revoke."[45] Under this test, a permit would not be revocable where revocation would result in the destruction of the licensee's sizable investments.[46] In such cases, the reserved right of revocation belies the reality that the permit is functionally irrevocable. Judge Wright concluded that the permit failed this first test: "the entire pipeline investment rests on continuing availability of the [permit] area [for maintenance and servicing purposes], and therefore, despite the fact that the application states that the [permit] is revocable and temporary, it is for all real purposes irrevocable."[47]

Under the second test, the court focuses on whether, upon revocation, the licensee could remove the installed structures, or otherwise vacate the land, without permanently damaging or destroying the property for governmental use.[48] The *Wilderness Society* court determined that the permit violated the second test because the proposed gravel work pad could not "be removed without producing permanent and deleterious changes in the underlying land."[49] The court cited the harmful effects with respect to vegetation, erosion, and the permafrost.[50]

Because the permit failed both tests, the court did not decide which test controlled.[51] In finding the permit not revocable, Judge Wright concluded that, when the permitted use is not temporary or occasional, but is functionally permanent, "the matter cannot be papered over merely by designating it as 'revocable' when it is not intended to be revocable and, in the nature of things, is not in fact revocable."[52]

■ We endorse Judge Wright's functional analysis of revocability in *Wilderness Society* and conclude that the revocable permit exception to the best interest finding requirement applies only if the permit is functionally revocable. Revocability for purposes of AS 38.05.035(e)(6)(C) should be assessed under a hybrid approach[53] which analyzes both (1) the likelihood of revocation and (2) the long-term and harmful character of the environmental impact. Because of the "importance of our land resources and of the concomitant necessity for observance of legal safeguards in the disposal or leasing of state lands,"[54] we must analyze the true nature of the proposed project and submit functionally irrevocable permits to the scrutiny of a best interest finding.[55]

---

**45.** *Id.* at 871.

**46.** *See id.* at 871–72.

**47.** *Id.* at 873. DNR points out that the likelihood-of-revocation test was rejected in a later D.C. Circuit opinion. In *Wilson v. Block,* 708 F.2d 735 (D.C.Cir.1983), the D.C. Circuit addressed a challenge to a land use permit issued by the U.S. Forest Service. The plaintiffs argued that, despite the facial revocability of the permit, the permit was not in fact revocable "because the Forest Service is unlikely to revoke it before the term of the permit expires." *Id.* at 760. Fully cognizant of the *Wilderness Society* case, the court responded: "The short answer is that the Forest Service has power to revoke." *Id.* at 760 n. 21. While this may lessen the precedential value of *Wilderness Society* within the D.C. Circuit, such a statement devoid of analysis and citation in no way diminishes the persuasive force of the en banc *Wilderness Society* opinion joined by such eminent jurists as Judges Bazelon, Leventhal, and Wright.

**48.** *See Wilderness Society,* 479 F.2d at 872.

**49.** *Id.* at 874.

**50.** *See id.* at 874–75.

**51.** *See id.* at 872.

**52.** *Id.* at 875.

**53.** The two *Wilderness Society* tests are not mutually exclusive and can properly be applied in tandem. In fact, Judge Wright explicitly considered the permanent and detrimental nature of the proposed gravel pad in his discussion of the likelihood-of-revocation test. *See id.* at 873–75.

**54.** *Alyeska Ski Corp. v. Holdsworth,* 426 P.2d 1006, 1011 (Alaska 1967).

**55.** This test for revocability does not conflict with our reasoning in *Swindel v. Kelly,* 499 P.2d 291 (Alaska 1972). In determining whether a permit is revocable, we look not only at its express terms but also at the "true intent of the agreed upon license." *Id.* at 296 n. 16. In *Swindel,* we determined that the terms of the expressly revocable land use permit were determinative in the context where the project required little investment and produced no discernible public benefit. *Id.* at 293 nn. 2–3, 295 n. 15, 296. But where a project is enormously expensive and important to the public, the parties' true intent may not be manifested in the permit's express power to revoke. In such cases, the court may properly look

After analyzing the *Wilderness Society* factors, we conclude that the Northern Intertie permit is not functionally revocable and is therefore subject to the AS 38.05.035(e) best interest finding requirement. Applying the first *Wilderness Society* factor, the permit has a negligible likelihood of revocation. The Northern Intertie project involves an enormous expenditure of resources, utilizing over $40 million in funds appropriated by the legislature.[56] This massive investment would be destroyed if DNR ever revoked the permit for the entire right-of-way. Moreover, DNR maintains that Northern Intertie serves the public interest of providing Fairbanks with a more reliable and less costly energy supply. Thus, the cost and alleged importance of the Northern Intertie support our conclusion that the permit is not functionally revocable.

Indeed, DNR and Golden Valley conceded in oral argument that any revocation would most likely apply only to a small portion of the right-of-way, resulting in the partial rerouting of the Intertie and thus the disposal of even more state land. This concession further supports our view that the likelihood of DNR revoking the permit for the entire project is extremely remote.

Applying the second *Wilderness Society* factor, the Northern Intertie project presents the likelihood of irreversible ecological changes. According to the Draft Environmental Impact Statement, the Rex–South route requires the clearing of approximately 1,319 acres of vegetation along its 97-mile path, including 867 acres of wetlands. Scientific research cited in the Environmental Impact Statement indicates that such vegetative clearing may result in the permanent thermal degradation of the sensitive Tanana Flats permafrost.

In light of the potential long-term environmental damage, the sheer magnitude of the project and concomitant investment of resources, and the asserted critical public importance, we hold that the Northern Intertie right-of-way permit is not functionally revocable and therefore is not exempted under

beyond the express terms of the permit without running afoul of *Swindel*.

AS 38.05.035(e)(6)(C) from the best interest finding requirement.

## IV. CONCLUSION

We REVERSE the decision of the Commissioner of the Department of Natural Resources issuing the Northern Intertie right-of-way permit to Golden Valley. Because this permit is not functionally revocable, it is not exempted from the best interest finding requirement under AS 38.05.035(e)(6)(C). Accordingly we REMAND the case to DNR for a best interest finding in accordance with AS 38.05.035(e).