*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SOP, INC., | ) | |
| | ) | Supreme Court No. S-14541 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-05670 CI |
| v. | ) | |
| | ) | OPINION ON REHEARING |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF NATURAL | ) | No. 6835 – October 11, 2013 |
| RESOURCES, DIVISION OF PARKS | ) | |
| AND OUTDOOR RECREATION, | ) | |
| BEN ELLIS, in his capacity as | ) | |
| Director, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Patrick Gilmore, Atkinson, Conway & Gagnon, Anchorage, for Appellant. John T. Baker, Senior Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices, and Carpeneti, Senior Justice pro tem.[*]

STOWERS, Justice.

---

[*] Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

The Nancy Lake State Recreation Area ("the Park")[1] was established by the Alaska Legislature for public recreation.  The Park's governing regulations prohibit the use of motorized vehicles off of the Park's paved roads.  However, the Park issues special use permits to owners of private property abutting the remote boundary of the Park that grant them the right to use all-terrain vehicles (ATVs) along the Butterfly Lake Trail to access their private property.  The ATVs have damaged the Butterfly Lake Trail and the surrounding wetlands.

SOP, Inc. sued to enjoin the Park from issuing these ATV permits.  SOP moved for summary judgment, and the Park filed a cross-motion for summary judgment.  Superior Court Judge Patrick J. McKay denied SOP's motion and granted the Park's motion, concluding "there is nothing in the statutes or regulations that justifies court intervention and invalidation of the permits."

SOP appealed.  We hold that the permits created easements because the Park cannot revoke the permits at will.  Easements are disposals of property. The Alaska Constitution prohibits the Park from disposing of property that the legislature has set aside as a state park. Thus, we find the permits are illegal and we reverse.

---

[1]    Nancy Lake State Recreation Area is a unit of the Alaska Department of Natural Resources, Division of Parks and Outdoor Recreation.  The special use permits that are the subject of this appeal are entitled "Alaska State Parks — Special Park Use Permit," and the permits bear the imprint of the Alaska State Parks emblem.  SOP's complaint names as defendants the Department of Natural Resources, Division of Parks and Outdoor Recreation and its Director.  For purposes of simplicity, we refer to Nancy Lake State Recreation Area and to the defendants/appellees as "the Park."

## II. FACTS & PROCEEDINGS[2]

### A. History Of Nancy Lake State Recreational Area And The Butterfly Lake Trail

In 1966 the Alaska Legislature established Nancy Lake State Recreation Area for the purpose of public recreation.[3] The Park's lands "are reserved from all uses incompatible with their primary function as public recreation land."[4] The Commissioner of the Department of Natural Resources has the authority to designate incompatible uses in the Park by regulation.[5] The Park is located near Willow and contains a chain of lakes connected by canoe portages.

In the 1960s, before the Park's establishment, a local property owner created a trail for winter snowmobile use from Lynx Lake to Butterfly Lake. This trail is now within the boundaries of the Park, and the Park converted part of it into a park

---

[2] The facts are drawn from the evidence in the record including depositions, sworn affidavits, and DNR internal records.

[3] AS 41.21.455(a) states:

> The presently state-owned land and water and all that acquired in the future by the state, lying within the following described boundary, are hereby designated as the Nancy Lake State Recreation Area, are reserved from all uses incompatible with their primary function as public recreation land, and are assigned to the department for control, development, and maintenance.

*See also* ch. 61, § 2, SLA 1966.

[4] AS 41.21.455(a).

[5] AS 41.21.460 states: "The commissioner shall designate by regulation incompatible uses within the boundaries of the Nancy Lake State Recreation Area in accordance with the requirements of AS 41.21.450, and those incompatible uses designated shall be prohibited or restricted, as provided by regulation."

trail known as the Butterfly Lake Trail.  The Butterfly Lake Trail is the only practical way to travel via land to certain areas of remote private property outside the Park.

The Matanuska-Susitna Borough plat denotes these private properties as having only fly-in access.  The plat's designation of fly-in-only access was a condition of its approval by the borough's planning board, and some landowners specifically purchased land there because they valued a remote homestead with limited access. However, more recently, the owners of some of these properties have placed their properties for sale and are advertising them as having ATV access; a few of the newer landowners may have bought their land believing there was motorized access.

In the 1960s, motorized use of the Butterfly Lake Trail was limited to the winter when the wetlands were frozen; tracked vehicles driving over the snowpack caused little damage to the trail.  At that time, ATVs were not yet powerful enough to traverse the muskeg in non-winter months.  However, ATVs evolved with greater engine power and capabilities in the 1970s and thereafter, becoming more popular, and individuals owning fly-in-only property outside the Park started illegally using ATVs on the trail for summer access to their land.  The ATVs damaged the Park's wetlands, causing the trail to become nearly unusable for recreational hikers.  The number of ATV permits that the Park issued during this time is unclear.  In 1973 the Park granted at least one permit to a nearby property owner with unusual circumstances to use the trail for motorized access to his property.[6]  The Park was unable to find documentation of any other permits from this time period, though it alleges other permits were issued.  In contrast, former Park Superintendent Dennis Heikes stated that there was no legal

---

[6]     This 1973 permit specifically stated that it was a "temporary measure" and that it was "revocable at any time."

motorized use of the Butterfly Lake Trail in 1983 when the Park adopted its Management Plan and that no such use was contemplated.

The 1983 Management Plan is still in effect, and it explains that "[t]he Lynx Lake road provides private access to authorized users who lived within and beyond NLSRA and were using the road for access to their property at the time of the recreation area's establishment in 1966." The Management Plan further provides that "[u]se of the unimproved pioneer road by the landowners will be allowed to continue on a permit basis. . . . Entry and use is controlled by the Division of Parks." At the time of the Management Plan's creation, the Park had not intended to permit summer ATV use beyond Lynx Lake.

Throughout the 1980s, park rangers ticketed some ATV users near Butterfly Lake, but this did not stop the abuse, and by 2000 ATV users had significantly damaged the Butterfly Lake Trail. They had gouged out sections of black mud over two feet deep along the trail. The mud eventually became impassible even to ATVs, so the ATV users repeatedly widened the trail to go around the muck. The widened trail sections ranged from 32 to 73 feet in breadth. This rerouting increased the damage to the surrounding plant life, and the wetlands section of the trail suffered nearly continuous damage, including denuded plants, crushed grass and succulents, and destroyed vegetative mats and root structures.

## B. Recent ATV Permitting

In July 2000 the Park superintendent wrote a letter to nearby property owners regarding the ATV problem. The letter stated that "no summer off-road motorized use [would be] allowed" because the terrain "is too wet to support this type of use. . . . The swampy areas along the trail cannot sustain the traffic they have received in recent years. As a result, the vegetative root mat has been destroyed and cannot recover due to the repeated damage by motorized vehicles in the summer." The letter

declared that the superintendent was "revoking any outstanding permits. No further permits for this activity will be issued for the foreseeable future. This action is being taken to prevent further resource damage."

In September 2000 Park representatives met with several property owners about the ATV damage to the trail. The property owners wanted to upgrade the trail so that it could support ATV use, but they did not want the Park to permit the general public to use ATVs on the trail because they did not want the public to be able to reach their private property. In 2002 the Park agreed to the property owners' request and allowed them to use private funds to upgrade and maintain the trail. Also, according to Dennis Heikes, the then-superintendent of the Park, "some Valley legislators were supportive of the private property owners and this threatened to become a 'right of access' issue that could have had budget and regulatory impacts to the division."

Since this meeting, the Park has allowed nearby landowners, and only nearby landowners, to use ATVs on the trail under "special park use" permits. The landowners may not use the trail for recreation, and they must "upgrade the trail at their own expense to a standard that would not degrade park resources." The first page of each permit states that "the State reserves emergency closure rights for just cause." The "General Stipulations" section of each permit reiterates that "[i]t is understood and agreed that this permit may be revoked for cause at any time at the discretion of the director or his/her designee without compensation to the permittee or liability to the state." The permits expire each December, and the Park reissues them each spring. No property owner has ever been turned down for a permit, nor has a permit ever been revoked since the Park began issuing the special use permits, apart from the superintendent's 2000 letter, which was quickly countermanded.

The original homesteads along Butterfly Lake have been subdivided into over 200 lots, and the number of landowners receiving ATV permits has steadily

increased. Despite the agreement between the property owners and the Park that the property owners would upgrade the trail so that the ATV use would not damage it, the trail continues to suffer harm. By 2006 some of the trail's wetter areas had turned into "mud bogs with all vegetation destroyed." By 2008 water-filled ATV tracks lined the trail, which was only traversable "by staying up on the high dry sides" and by "dry land hopping."

Also, in reliance on their ATV access, landowners began to store barges at the north end of Butterfly Lake, within Park boundaries, to freight ATVs across the lake. The barges are stored on Park property year round, and the permittees have cleared landing areas. Though the creation of landing areas and the storage of barges on park property are also illegal,[7] the Park has issued special use permits to private landowners (only) for this use as well.

## C. Proceedings

In February 2011 SOP sued to enjoin the Park from issuing permits for ATV use within Nancy Lake. SOP moved for summary judgment and the Park filed a cross-motion for summary judgment. The superior court denied SOP's motion for summary judgment and granted the Park's cross-motion. The court concluded that "there is nothing in the statutes or regulations that justifies court intervention and invalidation of the permits." While it admitted that SOP's concerns "are certainly legitimate," the court found that "these concerns arise under fair interpretations of duly adopted statutes and regulation." The court advised SOP "to address their concerns in the new management plan or within the rulemaking procedures."

SOP appeals. On appeal, it argues that: (1) the permits constitute disposals of state park land in violation of Alaska law; (2) the permits violate the Park's governing

---

[7] 11 Alaska Administrative Code (AAC) 12.140 (1985); 11 AAC 12.235.

statutes and thus are illegal; (3) the Park superintendent's new findings in support of the permits were retroactively adopted and "are a sham";[8] (4) the Park's regulations grant impermissibly broad discretion to the Park superintendent; (5) the permits actually create a regulation, which is impermissible because the regulation was not adopted in accordance with the Administrative Procedure Act; and (6) "issuance of the permits violates public policy by circumventing the constitutional restrictions on dispositions of state land."

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo."[9] We apply our independent judgment to constitutional questions.[10] Whether a permit creates a "disposal" of state land is a question of law.[11] In this case, whether an easement exists

---

[8] To issue permits under 11 AAC 18.010, the Park is required to make explicit findings that: "(1) park facilities and natural and cultural resources will not be adversely affected; (2) the state park is protected from pollution; (3) public use values of the state park will be maintained and protected; (4) the public safety, health, and welfare will not be adversely affected." However, for years the Park issued the contested ATV special use permits without making the required findings. SOP argued in the superior court that the permits were illegal because the Park had not made the required findings. After SOP advanced this argument, the Park quickly retroactively adopted findings. On appeal SOP argues that the new findings are a sham.

[9] *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008).

[10] *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 908 (Alaska 2001).

[11] *Laverty v. Alaska R.R. Corp.*, 13, P.3d 725, 731 (Alaska 2000).

is a question of law.[12]  "We review questions of law de novo and adopt the rule of law most persuasive in light of precedent, reason, and policy."[13]

## IV. DISCUSSION

### A. A Non-Revocable Permit Is An Easement.

Article VIII, §7 of the Alaska Constitution provides that "[t]he legislature may provide for the acquisition of sites, objects, and areas of natural beauty or of historic, cultural, recreational, or scientific value.  It may reserve them from the public domain and provide for their administration and preservation for the use, enjoyment, and welfare of the people."  This provision, allowing the legislature to reserve recreational lands for public use, means that those lands cannot be conveyed by the executive branch for private use.[14]  In addition, Article VIII, §10 provides that "[n]o disposals or leases of state lands, or interests therein, shall be made without prior public notice and other safeguards of the public interest as may be prescribed by law."  The grant of an easement is a conveyance or disposal of an interest in land within the meaning of these provisions, but the transfer of a license or permit generally is not.[15]

---

[12]     *See Williams v. Fagnani,* 175 P.3d 38, 40 (Alaska 2007); *see also Hansen v. Davis*, 220 P.3d 911, 915 (Alaska 2009).

[13]     *Williams,* 175 P.3d at 40.

[14]     *See* Minutes of the Alaska Constitutional Convention, January 17, 1956, Comments of Delegate Riley: "Section 8 reflects some delegate proposals whereby particular areas of sites or objects may be *set aside apart from the disposable public domain* for their historic, recreational, or cultural interest to the people." (Emphasis added.)

[15]     *See Laverty* 13 P.3d at 736 & n.54.

Both parties agree that if the Park grants a private easement over state park land, that easement is a disposal that would violate these constitutional provisions.[16] However, they disagree over whether the ATV permits constitute easements. SOP argues that the plain language of the ATV permits makes them easements, not licenses, and thus disposals of park land.[17] The Park argues that the ATV permits create only a license, not an easement, for the permit holders to use the Butterfly Lake Trail. We agree with SOP and conclude that the special park use permits create an easement through the plain language of their text.

Though licenses and easements share many characteristics, there are fundamental differences. According to the First Restatement of Property, "[a]n easement is an interest in land in the possession of another which . . . is not subject to the will of the possessor of the land."[18] The Restatement explains:

---

[16] *See Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 735-36 (Alaska 2000); *see also N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 637 (Alaska 2000) (holding that a right-of-way permit with the characteristics of an easement is considered a disposal).

[17] The Park contends that SOP waived this argument (that the text of the permits makes them easements) by failing to raise it in the superior court. However, SOP did argue to the superior court that "the permits are, in effect, a private access easement through a state park for the benefit of private property outside the park." Even if this argument was not one of the primary arguments, we will consider new arguments as long as they "do not depend on new facts and are sufficiently related to a theory argued below such that they could have been gleaned from the pleadings." *Palmer v. Municipality of Anchorage, Police and Fire Ret. Bd.*, 65 P.3d 832, 838 n.16 (Alaska 2003). SOP's easement argument fits within this exception because the theory that the language on the permits make them easements may be gleaned from SOP's argument that "[t]he permits are, in effect, a private access easement."

[18] RESTATEMENT (FIRST) OF PROPERTY § 450 (1944).

A license resembles an easement in that it authorizes a use of land in the possession of another. A license, however, always lacks one or more of the requirements essential to the creation of an easement. It may be no more than a license . . . because it was in terms created to endure only at the will of the licensor.[19]

The Restatement's commentary further fleshes out this distinction, noting that:

[I]nterests in land which entitle the owner thereof to the use of land in the possession of another, but which are subject to the will of the possessor, have legal attributes which are so different in their nature and extent from those of easements that such interests, though they may in many respects resemble easements, are given a different name and treated in a different category. Such interests are called licenses . . . .[20]

The requirement that an easement cannot be terminated at the will of the possessor of the servient estate is "the most important characteristic that distinguishes an easement from a license."[21] "The title of an instrument is not controlling in determining whether the right conferred is a license or an easement; rather, the intent of the parties will be the determining factor."[22]

The Third Restatement of Property's commentary further confirms that "[i]rrevocable licenses . . . are easements. The difference between a license to enter and

---

[19]     *Id.* § 512 (internal citations omitted).

[20]     *Id.* § 450 cmt. i.

[21]     4 RICHARD R. POWELL & PATRICK J. ROHAN, POWELL ON REAL PROPERTY § 34.02[1] n.5 (Michael Allan Wolf, ed., 2013) (citing RESTATEMENT (FIRST) OF PROPERTY § 450 cmt. i and § 512 (1944)); *see also* JON W. BRUCE & JAMES W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND, § 11:1 (2013) ("The most significant distinction is that an easement constitutes a nonpossessory interest in land and is not subject to revocation at will.").

[22]     25 AM. JUR. 2d *Easements and Licenses* § 2 (2004).

use land and an easement to make the same use is that the license is revocable at will by the owner of the burdened land."[23] Therefore, "[i]f the license becomes irrevocable, or revocable only on the occurrence of a condition, it is indistinguishable from an easement."[24]

**B.     The Special Park Use Permits Are Not Revocable At Will; Therefore, The Interests They Grant Are Easements.**

The plain text of the ATV permits makes clear they are revocable only for cause. The first page of each permit states that "the State reserves emergency closure rights for just cause." Under the "General Stipulations" section, each permit again informs its holders that "[i]t is understood and agreed that this permit may be revoked for cause at any time at the discretion of the director or his/her designee without compensation to the permittee or liability to the state." The permits list several conditions that constitute "for cause," including if the Park amends its off-road vehicle policy or if the permittee fails to fulfill any of the permit's terms. Nowhere do the permits state that the Park can terminate them at will.[25] Thus, the permits are clearly revocable only for cause.[26] This compels the conclusion that the interests granted by the permits are easements, not licenses.

---

[23]     RESTATEMENT (THIRD) OF PROPERTY § 1.2 cmt. g (2000).

[24]     *Id.*

[25]     *See Tetlin Native Corp. v. State*, 759 P.2d 528, 533 (Alaska 1988) (stating that "because the easements are property interests which can only be cancelled for cause, holders of such interests are entitled to due process before those interests are extinguished").

[26]     This conclusion is further supported by Superintendent Biessel's assurance to the property owners that they "would be in a status quo manner until the management plan revision had been completed."

**C.    No Other Considerations Prevent The Permits From Being Easements.**

The fact that the permits expire after half a year does not prevent them from being easements, as easements can be created for a limited duration.[27]  As well, easements can be created for seasonal use only,[28] so the Park's practice of restricting the permits to the summertime does not stop them from being easements.

The use authorized by the permits is essentially a right-of-way.  It is well established that "[a] right-of-way is an easement to pass or cross the lands of another."[29] "Rights-of-way are easements of a certain type, or legally recognized property interests, of which the owner likewise is entitled to reasonable use."[30]

In further support of our conclusion, we note that these permits have other characteristics more commonly found with easements than with licenses.  For instance, licenses are normally in gross, or assigned to a given person:  "A license does not pass with the title to the property, but is only binding between the parties, expiring upon the

---

[27]    28 C.J.S. *Easements* § 138 (2008).  "Where the parties have clearly manifested an intention to limit the duration of an easement, the courts will enforce the limitation.  Where the parties have agreed that the easement shall continue until terminated in a certain manner, the easement ordinarily will continue until so terminated." *Id.* at 139.

[28]    *See Price v. Eastham*, 75 P.3d 1051, 1058 (Alaska 2003) (noting that "courts have limited use of . . . easements to specific times of the year").

[29]    28  C.J.S. *Easements* § 10; *Cowan v. Yeisley*, 255 P.3d 966, 972 (Alaska 2011) (noting that "[t]he general rule is that the term 'right of way' is synonymous with 'easement' " (quoting *Dillingham Commercial Co., Inc. v. City of Dillingham*, 705 P.2d 410, 415 (Alaska 1985))).

[30]    25 AM. JUR. 2d *Easements and Licenses* § 1 (2004).

death of either party."[31] In contrast, easements frequently do transfer with the title to the property.[32] Here, the Park issues one ATV permit per property, and multiple people living on the same property can operate multiple ATVs under that permit. The Park only issues permits to private property owners near Butterfly Lake, meaning that if an owner sells his property, he loses the right to have a permit. The Park has never turned down an application for a permit from a nearby property owner, rather it "issue[s] . . . permits fairly and uniformly to property [owners]." In practice, it appears that owning private property on or near Butterfly Lake entitles the property owner to a permit, and that ownership is the sole factor controlling who has a right to obtain a permit to use an ATV on the Butterfly Lake Trail. For these reasons, the permits function similarly to easements appurtenant. Given these facts, we infer the parties intended that private land owners will be granted a seasonal right of ATV use that runs with the property that no one else is entitled to receive. We conclude the rights of use granted by the Park are easements, and therefore they are illegal.[33]

---

[31]    *Id.* § 120.

[32]    *Id.* § 8 (stating that "[a]n 'easement appurtenant' is a right to use a certain parcel, the servient estate, for the benefit of another parcel, the dominant estate. Grantors create easements appurtenant to benefit a dominant estate, and such easements run with the land"). (Internal footnotes omitted.)

[33]    We do not reach the *Northern Alaska Environmental Center v. State, Department of Natural Resources*, 2 P.3d 629 (Alaska 2000) analysis because, unlike the permits in *Northern Alaska* which claimed to be revocable at will, the ATV permits issued by the Park openly state they are revocable only for cause. *Id.* at 633.

## V.    CONCLUSION

Because Nancy Lake State Recreation Area special park use permits that are revocable only for cause convey easements, not licenses, and because the granting of easements is an impermissible disposal of state park land, we REVERSE the superior court's grant of summary judgment to the Park and its denial of summary judgment to SOP and REMAND for further proceedings consistent with this opinion.[34]

---

[34]    In light of this resolution of the appeal, we do not reach the other arguments raised by SOP.

# In the Supreme Court of the State of Alaska

SOP, Inc.,                                    )
                                              )        Supreme Court No. **S-14541**
                        Appellant,            )
                                              )
            v.                                )              **Order**
                                              )         Petition for Rehearing
**State of Alaska, Dept. of Natural**         )
**Resources, Div. of Parks and Outdoor**     )
**Recreation, and Ben Ellis, Director**,      )
                                              )
                        Appellees.            )        Date of Order: **10/11/13**

Trial Court Case # **3AN-11-05670CI**

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices

Having considered the State of Alaska, DNR's 7/29/13 petition for rehearing and SOP, Inc.'s 8/5/13 opposition,

**It is Ordered**:  The Petition for Rehearing is **Granted**.  Opinion No. 6800 issued on 7/19/13 is **Withdrawn**.

Opinion No. 6835 is issued on this date in its place. The modifications to the new opinion are: (1) in  footnote 16, a citation to *Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 735-36 (Alaska 2000) was added; and (2) in footnote 33 all of the footnote beginning after the second sentence (beginning with "Thus we do not need to consider . . . .") has been deleted.

Entered by direction of the court.

Clerk of the Appellate Courts

_____
         lul
Marilyn May

cc:    Supreme Court Justices
       Judge McKay
       Trial Court Appeals Clerk
       Publishers

Distribution:

Patrick B Gilmore
Atkinson Conway & Gagnon Inc
420  L  St Ste 500
Anchorage AK 99501

John T Baker
Assistant Attorney General
1031 W 4th Ave Ste 200
Anchorage, AK 99501