*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

CITY OF VALDEZ, )
) Supreme Court No. S-15840
Appellant, )
) Superior Court No. 3AN-13-08917 CI
v. )
) O P I N I O N
STATE OF ALASKA, NORTH SLOPE )
BOROUGH, and FAIRBANKS NORTH ) No. 7100 – April 29, 2016
STAR BOROUGH, )
)
Appellees. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Robin O. Brena, Laura S. Gould, and Jon S. Wakeland, Brena, Bell & Clarkson, P.C., Anchorage, for Appellant. Mary Hunter Gramling, Assistant Attorney General, and Craig W. Richards, Attorney General, Juneau, for Appellee State of Alaska. No appearance by Appellees North Slope Borough and Fairbanks North Star Borough.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I. INTRODUCTION

Under a Department of Revenue regulation, all appeals of oil and gas property tax valuation must be heard by the State Assessment Review Board (SARB),

while appeals of oil and gas property taxability must be heard by the Department of Revenue (Revenue).  Three municipalities challenged this regulation, arguing that it contradicts a statute that grants SARB exclusive jurisdiction over all appeals from Revenue's "assessments" of oil and gas property.  The superior court upheld the regulation as valid, concluding that it was a reasonable interpretation of the statute.  But we conclude that the regulation is inconsistent with the plain text, legislative history, and purpose of the statute; therefore, we reverse the superior court's judgment.[1]

## II.     FACTS AND PROCEEDINGS

### A.      Regulatory Background

The Alaska Constitution grants the legislature the authority to set "[s]tandards for the appraisal of all property assessed by the State or its political subdivisions."[2]  In 1973 the legislature used this authority to establish an overarching regime for the statewide assessment of oil and gas property[3] in order to levy ad valorem

---

[1]     This full opinion follows our earlier summary order resolving this appeal. *See City of Valdez v. State*, *et al.*, ___ P.3d ___, Order No. 89 (Alaska Jan. 29, 2016).

[2]     Alaska Const. art. IX, § 3.

[3]     To constitute taxable oil and gas property, the property must be "used or committed by contract . . . for use within [Alaska] primarily in the exploration for, production of, or pipeline transportation of gas or unrefined oil . . . , or in the operation or maintenance of facilities used [for such purposes]." AS 43.56.210(5)(A).  The statute then enumerates specific types of property that do and do not constitute oil and gas property.  *See* AS 43.56.210(5)(A)-(B).  Revenue has adopted a regulation that defines property with the requisite "primary use" as property that is "committed by contract, specification, or other expressed intention of the property owner to one or more of these purposes," or property that is actually used for such purposes more than 50 percent of its total operation time in the year preceding the assessment year.  15 Alaska Administrative Code (AAC) 56.075(a) (2015).

taxes.[4]  Under this statewide regime, codified at AS 43.56, the State taxes oil and gas property at 20 mills, and municipalities are permitted to tax oil and gas property located within their boundaries at the same rate as they do local property.[5]  But the State, through Revenue, manages this assessment process, determining whether property is taxable under AS 43.56 and, if so, its taxable value.[6]

The assessment process begins each year in January when oil and gas property owners file returns listing and describing their taxable oil and gas properties.[7] Revenue may then choose to investigate any information included or omitted on the return.[8]  It must also make an initial taxability determination whether an asset is properly deemed taxable oil and gas property under the statute.[9]  Revenue then ascribes a valuation to the property, which becomes prima facie evidence of the property's full value.[10]  Next, Revenue issues an assessment roll listing all taxable oil and gas property for that year and its assessed value.[11]  On or around March 1 of each year, Revenue sends an assessment notice to each owner whose property is included on the assessment roll,

---

[4]       Ch. 1, §1, FSSLA 1973.

[5]       AS 43.56.010(a)-(b).

[6]       AS 43.56.060.  Revenue is permitted to enter into joint or cooperative assessment administration agreements with municipalities, but has never entered into such an arrangement with Valdez.  AS 43.56.060(g).

[7]       AS 43.56.070(a); 15 AAC 56.005(a).

[8]       AS 43.56.080.

[9]       See AS 43.56.210(5).

[10]      AS 43.56.080(a).

[11]      AS 43.56.090.

and a copy of the notice to each relevant municipality.[12] The statutory scheme provides both taxpayers and affected municipalities with a series of appeals of this preliminary assessment, first to Revenue,[13] then to SARB,[14] then to the superior court for a trial de novo.[15] Revenue must then issue a final assessment roll by June 1 of each year.[16]

After the legislature initially established this assessment scheme, all appeals of Revenue's oil and gas property tax assessments were heard by SARB.[17] In 1986 Revenue promulgated a more detailed framework to govern these appeals.[18] Under this framework, appeals of Revenue's valuation of a property proceed on a separate track from appeals of Revenue's determination that a property is taxable under AS 43.56. A property owner or municipality appealing Revenue's valuation of oil and gas property must appeal first to Revenue; Revenue issues an informal conference decision, which can

---

[12]     AS 43.56.100.

[13]     AS 43.56.110.

[14]     AS 43.56.120.  SARB is a specialized board comprised of five persons knowledgeable about assessment procedures who are appointed by the governor and subject to legislative confirmation.  AS 43.56.040.

[15]     AS 43.56.130(I).

[16]     AS 43.56.135.

[17]     *See Alyeska Pipeline*, No. 001-000-0015 (State Assessment Review Bd. Dec. 9, 1974).

[18]     This regulation was amended once, in 2003, to grant a municipality an identical right to that of a taxpayer to appeal Revenue's determination of whether property is taxable. *Compare* 15 AAC 56.015 (eff. 5/10/86), *with* 15 AAC 56.015 (am. 1/1/03).

be appealed to SARB.[19] SARB's decision can then be appealed to the superior court for a trial de novo.[20] In contrast, a property owner or municipality appealing Revenue's determination whether property is taxable under AS 43.56 must also appeal to Revenue, which issues an informal conference decision;[21] but an appeal from this informal conference decision is heard by a hearing officer appointed by the Commissioner of Revenue, not by SARB.[22] The hearing officer's decision can then be appealed to the superior court,[23] but the decision to grant a trial de novo is left to the discretion of the superior court judge.[24]

This regulation also modified who is granted party status in such appeals. Previously, both property owners and affected municipalities were afforded party status in all appeals, while the new regulation affords affected municipalities different rights depending on what the appeal concerns: in valuation appeals before SARB both

---

[19]    15 AAC 56.015(a) (appeal procedures); 15 AAC 56.020(c) (Revenue issues informal conference decision); 15 AAC 56.030 (appeal to SARB).

[20]    AS 43.56.130(I).

[21]    15 AAC 56.015(b)-(c); 15 AAC 05.020.

[22]    15 AAC 05.030. Procedures for such appeals are governed by 15 AAC 05.001-50.

[23]    15 AAC 05.040; Alaska R. App. P. 601(b).

[24]    Alaska R. App. P. 609(b)(1); *see also City of Valdez v. State, Dep't of Revenue*, Nos. 3VA-00-00022 CI, 3VA-10-00084 CI, 3AN-11-07874 CI, (consol.) (Alaska Super., Nov. 18, 2013) (noting that the superior court had earlier denied Valdez's request for a trial de novo in an appeal from a decision of the Commissioner of Revenue on the issue of taxability under AS 43.56).

property owners and the relevant municipality have party status,[25] but in taxability appeals before Revenue only the appellant is afforded party status.[26]

## B. Facts

The Trans-Alaska Pipeline System (TAPS) is an 800-mile-long oil pipeline system that connects the North Slope oil fields to a shipping terminal in Valdez. En route it crosses through the North Slope Borough (NSB), the Fairbanks North Star Borough (FNSB), and the City of Valdez. In February 2013 Revenue issued a notice of assessment for oil and gas property held by the TAPS owners[27] for Assessment Year 2013. The TAPS owners appealed this notice of assessment, objecting both to Revenue's assessed value of the property and its determination that certain pieces of property were taxable as oil and gas property under AS 43.56.

The TAPS owners' two appeals proceeded simultaneously on two separate tracks: Revenue issued an informal conference decision on the valuation appeal, which the owners appealed to SARB, then further appealed to the superior court for a trial de novo. The affected municipalities also cross-appealed SARB's decision on the valuation appeal to the superior court. Revenue issued a separate, confidential informal

---

[25]     15 AAC 56.020(b).

[26]     15 AAC 56.015(b)-(c) (taxability appeals governed by 15 AAC 05.001-.050); 15 AAC 05.001-.050 (containing no provision for party status as of right). For example, if a property owner objected to a taxability determination, an affected municipality would not be able to participate in the taxability appeal until the property owner exhausted all administrative appeals and the matter became ripe for appeal to the superior court.

[27]     At the time of the 2013 assessment TAPS was jointly owned by BP Pipelines (Alaska), Inc.; ConocoPhilips Transportation Alaska, Inc.; ExxonMobil Pipeline Company; Unocal Pipeline Company; and Koch Alaska Pipeline Company. Alyeska Pipeline Service Company served as the agent for the TAPS owners.

conference decision on the TAPS owners' taxability appeal, dismissing the appeal for lack of jurisdiction after it found that the appeal actually raised issues of valuation, which "are within the exclusive jurisdiction of . . . SARB under AS 43.56.120 [and] [AS 43.56].130."[28]

The TAPS owners appealed this decision to the Commissioner for a formal conference. The TAPS owners and the State then jointly filed a stipulation and motion requesting that the decision dismissing the taxability appeal for lack of jurisdiction be adopted as the final administrative decision of Revenue for purposes of further appeal to the superior court. The TAPS owners also filed an unopposed motion to stay the taxability appeal pending resolution of their separate valuation appeal by the superior court,[29] which the hearing officer granted.

### C.    Proceedings

After repeatedly attempting but failing to obtain information regarding the status of the TAPS owners' taxability appeal, the affected municipalities filed complaints for declaratory and injunctive relief with the superior court. NSB first filed, then Valdez and FNSB (collectively "the intervenors") successfully intervened in the case without opposition, and jointly filed a separate complaint. The municipalities all challenged the validity of 15 AAC 56.015(b)-(d), Revenue's regulation governing taxability appeals from assessments of oil and gas property; they argued that this regulation impermissibly delegates the authority to decide taxability appeals to Revenue, contravening the statute's

---

[28]    The municipalities did not have access to this docket, and thus were unaware of this decision on the owners' taxability appeal, until they filed suit for declaratory relief.

[29]    The valuation appeal is itself stayed before the superior court, pending resolution of *North Slope Borough v. BP Pipelines (Alaska) Inc.*, No. 3AN-06-08446 CI, which the parties have recently settled.

grant of authority to SARB to hear all appeals from initial assessments of such property.[30]

The intervenors then filed a motion for summary judgment, on which the superior court ruled in a consolidated order, denying the municipalities' requests to invalidate the regulation.[31] The court conceded that Revenue's interpretation was not the only or even the most reasonable interpretation but nonetheless concluded that the regulation was a permissible interpretation of the statute. The superior court then entered a final judgment to this effect. Valdez now appeals.

## III. STANDARD OF REVIEW

When reviewing the validity of a regulation, in the absence of any contention that the agency failed to comply with the required procedures for promulgation, we presume that it is valid and place the burden on the challenging party to prove otherwise.[32] We consider whether the regulation is "consistent with and reasonably necessary to carry out the purposes of [its enabling statute] and whether [it

---

[30] In addition to challenging the validity of the regulation, the municipalities claimed that Revenue impermissibly denies the municipalities the ability to participate in taxability appeals in which they have a direct interest. Finally they claimed that Revenue improperly treats the dockets of taxability appeals as "taxpayer confidential" and asserted that they and the public have a right of access to the dockets of such proceedings.

[31] The court's order also granted the requested declaration that affected municipalities have the right to participate in taxability appeals before Revenue and denied without prejudice the intervenors' request for a declaration for public access to appeals.

[32] *See Grunert v. State*, 109 P.3d 924, 928-29 (Alaska 2005) (citing *Lakosh v. Alaska Dep't of Envtl. Conservation*, 49 P.3d 1111, 1114 (Alaska 2002)).

is] reasonable and not arbitrary."[33] " '[R]easonable necessity is not a requirement separate from consistency' and the scope of review should center around consistency with the authorizing statute."[34] A regulation's consistency with its enabling statute is a question of law to which we apply "the appropriate standard of review based on the level of agency expertise involved."[35]

If the issue involves agency expertise or the determination of fundamental policy questions on subjects committed to the agency's discretion, reasonable basis review applies.[36] In applying reasonable basis review, we seek "to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination."[37]

If no agency expertise is involved in the agency's interpretation, we apply the substitution of judgment standard.[38] Under this standard, we exercise our independent judgment, substituting it "for that of the agency even if the agency's

---

[33]     *State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance v. Gross*, 347 P.3d 116, 121 (Alaska 2015) (quoting *Lakosh*, 49 P.3d at 1114 (alterations omitted)); *see also* AS 44.62.030.

[34]     *Id.* at 121 n.25 (quoting *Bd. of Trade, Inc. v. State, Dep't of Labor, Wage & Hour Admin.*, 968 P.2d 86, 89 (Alaska 1998)).

[35]     *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014).

[36]     *See Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

[37]     *Davis Wright*, 324 P.3d at 299 (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[38]     *Marathon Oil*, 254 P.3d at 1082.

[interpretation] ha[s] a reasonable basis in law."[39] We will adopt "the rule of law that is most persuasive in light of precedent, reason, and policy, but in doing so we give due deliberative weight 'to what the agency has done, especially where the agency interpretation is longstanding.' "[40]

The parties disagree whether this regulation implicates agency expertise or fundamental agency policy, and thus disagree whether reasonable basis or substitution of judgment review applies. They also disagree whether Revenue's interpretation is longstanding. We conclude that this regulation does not implicate Revenue's expertise or fundamental policies and thus apply the substitution of judgment standard in assessing the validity of Revenue's interpretation of the statute.

In upholding the validity of the regulation the superior court applied reasonable basis review, citing Revenue's "expertise regarding the most efficacious forum [for taxability appeals] in terms of staff and year-round availability, SARB's work load, the advantages of formal motion practice and discovery in . . . taxability versus valuation appeals, and any need for rapid decision as to both genres of appeals." But if the subjects that the superior court characterized as within Revenue's expertise were sufficient for reasonable basis review to apply, then substitution of judgment review would almost never apply because an agency will nearly always be more knowledgeable about its internal administrative functioning and capacity than a court. But Revenue's expertise is in tax policy, not relative efficacy of forums or procedural needs.

In determining which standard of review applies to this regulation we must precisely identify the statutory term the regulation is interpreting. We have previously

---

[39]     *Tesoro Alaska*, 746 P.2d at 903.

[40]     *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013) (quoting *Chugach Elec. Ass'n v. Regulatory Comm'n of Alaska*, 49 P.3d 246, 249-50 (Alaska 2002)).

held that the substitution of judgment standard applies when reviewing an agency's interpretation of "non-technical statutory terms."[41] This is because "mere familiarity in . . . application [of these terms] by the [agency] does not render that agency any better able to discern the intent of the legislature than the courts."[42] Examples of such terms we have deemed to be non-technical include "adjacent to,"[43] "local authorized planning agencies,"[44] "disposal,"[45] "interest in land,"[46] and "revocable."[47] Here the term "assessment" is commonly used by the general public and thus conforms with these other terms that we have previously found to be non-technical terms and matters of pure statutory construction.[48] Further we have also stated that the substitution of judgment standard is appropriate where the case concerns "analysis of legal relationships about which the courts have specialized knowledge and experience."[49] Here Revenue's

---

[41] *N. Alaska Envtl. Ctr. v. State, Dep't of Nat. Res.*, 2 P.3d 629, 633 (Alaska 2000).

[42] *Id.* at 634 (quoting *State v. Aleut Corp.*, 541 P.2d 730, 737 (Alaska 1975)).

[43] *Aleut Corp.*, 541 P.2d at 736.

[44] *Id.* at 737-38.

[45] *N. Alaska Envtl. Ctr.*, 2 P.3d at 633.

[46] *Id.*

[47] *Id.*

[48] *Cf. State, Dep't of Revenue v. OSG Bulk Ships, Inc.*, 961 P.2d 399, 403 n.6 (Alaska 1998) (holding that the construction of a tax statute was "a matter of pure statutory construction which is not within the particular expertise of [Revenue] and which requires us to exercise our independent judgment").

[49] *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (quoting *Earth Res. v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska (continued...)

interpretation of the term "assessment" implicates such a legal relationship: the scope of Revenue's jurisdiction in relation to that of SARB. Because this case involves both statutory interpretation of a non-technical statutory term, a task in which courts are well versed,[50] and the question of the scope of and relationship between Revenue's and SARB's jurisdictions,[51] we will apply substitution of judgment review in considering whether Revenue's interpretation of AS 43.56 through its regulation is consistent with the statute.

We also may in some circumstances give more deference to agency interpretations that are "longstanding and continuous."[52] The State argues that Revenue's interpretation is entitled to our deference due to its longstanding nature. Revenue first promulgated this regulation in 1986 and amended it in 2003 to afford municipalities the right to appeal taxability determinations. It has thus existed in its current form for 12 years and has twice been the subject of public notice and comment, as part of the required process for promulgating regulations.[53]

But the application of this regulation has not been consistent. After the regulation was promulgated, SARB, an independent entity from Revenue, continued to

---

[49]     (...continued)
1983)).

[50]     *Grunert v. State*, 109 P.3d 924, 929 (Alaska 2005) (stating that the task of statutory interpretation is "a function uniquely within the competence of the courts").

[51]     *Cf. McCaffery v. Green*, 931 P.2d 407, 408 n.3 (Alaska 1997) ("Jurisdictional issues are questions of law subject to this court's independent judgment.").

[52]     *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007).

[53]     *See* AS 44.62.190-.215.

hear taxability appeals from oil and gas property assessments. SARB decided a taxability appeal regarding TAPS property as recently as 2008.[54] It was not until the following year that SARB asserted that under 15 AAC 56.015, it had no role in taxability appeals and would not hear them unless the municipalities "prevail[ed] in a court challenge to the validity of the regulations that give [Revenue] jurisdiction over taxability issues."[55] Given the relatively recent conflicting actions of Revenue and SARB, Revenue's interpretation is not entitled to the additional deference that we afford longstanding and continuous interpretations.

In applying substitution of judgment review, we interpret the statute at issue de novo.[56] When construing statutes de novo, we consider three factors: "the language of the statute, the legislative history, and the legislative purpose behind the statute."[57] We "decide questions of statutory interpretation on a sliding scale"[58]: "the plainer the

---

[54] *Trans-Alaska Pipeline Sys.*, OAH No. 08-SARB-TAX at 18-19 (May 30, 2008), http://aws.state.ak.us/officeofadminhearings/Documents/TAX/PROP/TAX08SARB%20TAPS.pdf.

[55] *Appeal from the 2009 Assessment*, OAH No. 09-SARB-TAX at 2 (May 21, 2009) (order staying appeal).

[56] *See Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) ("We apply the [substitution of] judgment standard, under which 'the court makes its own interpretation of the statute at issue . . . .' " (quoting *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986))).

[57] *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012) (quoting *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010)).

[58] *Marathon Oil Co.*, 254 P.3d at 1082.

language of the statute, the more convincing any contrary legislative history must be . . . . to overcome the statute's plain meaning."[59]

## IV.    DISCUSSION

Revenue promulgated 15 AAC 56.015 in 1986.[60] Subsection (a) provides for appeals of "the assessed value of [oil and gas] property":[61] the property owner or the relevant municipality may file an appeal with Revenue "as provided in 15 AAC 56.020 or 15 AAC 56.047, as applicable."[62] Those regulations in turn set procedures for the appeal and provide that Revenue's decision on the appeal may be appealed to SARB.[63] Subsections (b) and (c) set taxability appeals on a separate procedural route: property owners and municipalities challenging a taxability determination must appeal under 15 AAC 05.001-.050, not 15 AAC 56.020.[64] Those regulations contain Revenue's general hearing procedures, and provide that Revenue's decision on the taxability appeal may be appealed to a formal hearing before Revenue.[65] They do not provide for an appeal to SARB.

---

[59]    *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991).

[60]    The regulation lists AS 43.05.010, .080, and .260, AS 43.56.110-.130, .140, and .200 as its statutory authority. 15 AAC 56.015.

[61]    15 AAC 56.015(a).

[62]    *Id.*

[63]    15 AAC 56.020, .030(a), and .047(d).

[64]    15 AAC 56.015(b)-(c). Subsection (d) also directs property owners appealing "a statement of the amount of tax or penalty due" to 15 AAC 05.001-.050. 15 AAC 56.015(d).

[65]    15 AAC 05.001, .030, and .040.

Valdez challenges subsections (b) through (d) of this regulation.  Alaska Statutes 43.56.110-.130 provide that SARB shall hear administrative appeals of all "assessment[s]" of oil and gas property;[66] through this regulation, Revenue has therefore interpreted "assessment" in AS 43.56 to include only the valuation of taxable oil and gas property, and not Revenue's initial determination of taxability.  In contrast Valdez argues that "assessment" encompasses the determination of whether property is taxable under AS 43.56, because that determination is made by Revenue in the initial stages of the assessment process.  Valdez concludes that appeals of taxability determinations are therefore committed to SARB's jurisdiction by statute, and that 15 AAC 56.015 impermissibly removes those appeals from SARB's jurisdiction.

In order to determine whether Revenue's interpretation is consistent with AS 43.56, it is first necessary to independently interpret AS 43.56 using our three metrics for statutory interpretation:  text, legislative history, and purpose.[67]  This is the first time we have been squarely presented with the question of the scope of the term "assessment" in AS 43.56.  In a pair of prior decisions on other issues associated with AS 43.56, we appeared to use the term "assessment" as referring to value.[68]  But this prior usage is not

---

[66]     AS 43.56.110(a) (property owners and municipalities "may object to [an] assessment"); AS 43.56.120(a) ("After a ruling by [Revenue] on an appeal made under AS 43.56.110, the owner or a municipality may further appeal to [SARB]."); AS 43.56.130(a) ("[SARB] shall hear appeals filed under AS 43.56.120(a).").

[67]     *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012).

[68]     *See State, Dep't of Revenue v. BP Pipelines (Alaska) Inc.*, 354 P.3d 1053, 1056 (Alaska 2015) ("Under Alaska law . . . only [Revenue] may assess the value of [oil and gas] property. . . . A party may appeal [Revenue's] *valuation* to [SARB]." (emphasis added)); *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 325 P.3d 478, 480 (Alaska 2014) ("[Revenue] assesses the 'full and true value' of [oil and gas] property.
(continued...)

binding on the question now before us because in both prior cases the only issues presented were those of valuation,[69] so we had no need to distinguish between issues of valuation and issues of taxability for the purposes of assessments. Accordingly, we will proceed by individually examining each of the three statutory interpretation metrics: the statute's text, legislative history, and purpose.

### A.    Revenue's Interpretation Of "Assessment" Through Its Regulation Is Not Consistent With The Text Of AS 43.56.

"Interpretation of a statute begins with its text."[70] But AS 43.56 does not define the term "assessment."[71] And AS 43.56's plain text does not distinguish between appeals involving valuation and appeals involving taxability. As the superior court recognized, "[t]he only explicit appellate path specified in AS 43.56 is through SARB."[72] Whether the text of AS 43.56 is flexible enough to accommodate Revenue's interpretation through its regulation depends on the scope of the statutory term "assessment."

---

[68]    (...continued)
Alaska Statute 43.56.060 controls [Revenue's] assessment. A party may appeal [Revenue's] *valuation* to . . . [SARB]." (emphasis added) (footnote omitted)).

[69]    *See BP Pipelines*, 354 P.3d at 1055; *BP Pipelines*, 325 P.3d at 480.

[70]    *City of Kenai v. Friends of the Recreation Ctr., Inc.*, 129 P.3d 452, 458-59 (Alaska 2006) (citing *Bartley v. State, Dep't of Admin., Teachers Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[71]    *See* AS 43.56.210 (providing definitions of terms used in the chapter, but not defining "assessment").

[72]    *See* AS 43.56.120.

## 1.    The text of the overall statutory scheme

Because the term "assessment" is used throughout AS 43.56's statutory scheme, an outline of the language set forth in the statutory scheme will prove helpful here:

(1) Alaska Statute 43.56.060 provides standards for the assessment and taxation of oil and gas property.  Subsections (a) and (b) mandate that Revenue "shall assess property."[73]   Subsections (c) through (f) then set out the standards for the valuation of oil and gas property.  But these subsections describe the proper valuation of "*taxable* property,"[74] rather than simply "property."  This distinction — Revenue assesses *all* property but then only values *taxable* property — indicates that the assessment required by AS 43.56.060(a) necessarily includes a determination that property is taxable under AS 43.56.[75]   The text of this section thus suggests that the taxability determination is a component of the assessment process, not a determination that precedes the process.

(2) Alaska Statute 43.56.090 requires Revenue to prepare annually an assessment roll containing three things:  "a description of all taxable property; . . . the assessed value of all taxable property; [and] . . . the names and addresses of persons owning property subject to assessment and taxation."  The first component of the

---

[73]    AS 43.56.060(a) & (b).

[74]    AS 43.56.060(c)-(f) (emphasis added).

[75]    This distinction appears elsewhere in the statute as well, indicating that it is not simply a drafting error.  For example, Revenue "may make an investigation of property on which a return has been filed or of taxable property upon which no return has been filed."  AS 43.46.080(a).  And AS 43.56.210(5) specifically defines "taxable property," suggesting that the legislature specifically used that term throughout when it meant to refer only to property taxable under the statute.

assessment roll, "a description of all taxable property," necessarily involves a determination by Revenue that the property described is taxable under AS 43.56. The statutory scheme defines what constitutes taxable property under AS 43.56 and specifically enumerates certain types of property that are and are not included in the definition of taxable property.[76] Thus in order to prepare the statutorily mandated assessment roll, Revenue must make an initial determination that property fits within the statutory definition of taxable oil and gas property and is not exempted from taxation. And, as discussed above, that determination is a part of the assessment process.

(3) Under AS 43.56.100, Revenue must annually "send to every owner of taxable property named in the assessment roll a notice of assessment, showing the assessed value of the property" and must send "a copy of the notice of assessment on any taxable property that is assessed under [AS 43.56]" to each affected municipality. This assessment notice thus serves as both notice of a property's assessed value *and* notice that the property has been determined taxable under AS 43.56, as the statute does not require that owners of property deemed not taxable under AS 43.56 receive any such assessment notice.

(4) Under AS 43.56.110, a property owner or municipality who receives such an assessment notice may appeal it "by advising [Revenue] in writing of the objections to the assessment within 20 days of the effective date of the notice."[77] Upon a property owner's objection, Revenue is authorized to "adjust the assessment and the assessment roll."[78] This subsection does not limit what an owner or municipality can appeal to Revenue — any objection to the assessment may be appealed. By the plain

---

[76]      AS 43.56.210(5).

[77]      AS 43.56.110(a).

[78]      AS 43.56.110(c).

language of the statute, this includes the mere fact of the property's inclusion on the assessment roll, not only the dollar amount at which Revenue has valued the property. Revenue's remedial power is similarly broad, encompassing the power to adjust both the assessment and the assessment roll.[79]  Thus, if a property owner or municipality can appeal the inclusion of property on the assessment roll, Revenue may remove the property from the roll altogether if it agrees that the property is not taxable; its power is not limited to adjusting the valuation of the property.

(5) Alaska Statute 43.56.120 provides that "[a]fter a ruling by [Revenue] on an appeal made under AS 43.56.110, the owner or a municipality may further appeal to [SARB]." This section is simple and unequivocal:  whatever was appealed to Revenue under AS 43.56.110 can be further appealed to SARB.  And, as previously noted, under AS 43.56.110 the property owner can object to any aspect of the assessment notice and Revenue must rule on this objection.

(6) Alaska Statute 43.56.130 further underscores the broad scope of SARB's jurisdiction established by AS 43.56.120.  This section establishes procedures for hearings before SARB and mandates that SARB "*shall* hear appeals filed under AS 43.56.120(a)."[80]  The use of the mandatory "shall" indicates that the legislature did not intend to grant SARB or Revenue the discretion to categorically remove a class of appeals from SARB's jurisdiction.

(7) Alaska Statute 43.56.130(f) provides that SARB may adjust a property's assessed value only upon "proof of unequal, excessive, or improper valuation or valuation not determined in accordance with the standards set out in [AS 43.56]." But

---

[79]     *Id*.

[80]     AS 43.56.130(a) (emphasis added).

simply because the legislature limited the grounds upon which SARB could adjust a property's assessed value does not indicate that it intended to limit SARB's role solely to adjustments of value. Such an interpretation of AS 43.56.130(f) would contradict AS 43.56.130(a)'s simple and explicit command that SARB "shall hear appeals filed under AS 43.56.120(a)."[81] Moreover a property that Revenue has incorrectly determined is taxable has certainly been "improper[ly] valu[ed]," so AS 43.56.130(f) expressly permits SARB to address issues of taxability. Indeed this is how SARB interpreted the grant of jurisdiction for many years before Revenue promulgated 15 AAC 56.015.[82]

(8) Finally, AS 43.56.135 mandates that Revenue "shall certify the final assessment roll and mail . . . a statement of the amount of tax due" to each owner of taxable property by June 1 of each year. This requirement implies that all issues relating to the assessment roll must be resolved at the administrative level by June 1 of each year. This requirement must encompass taxability appeals, because an assessment roll is not final if it still contains property whose owners are disputing its taxability in appeal proceedings before Revenue. Allowing taxability appeals at the administrative level to extend beyond June 1, as taxability appeals before Revenue currently do, contravenes

---

[81]     *See Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013) ("When interpreting statutes, 'we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole.' " (quoting *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007))).

[82]     *See, e.g., Alascom Inc.* at 11 (State Assessment Review Bd. Mar. 31, 1981) (concluding that Revenue's assessment of a segment of a telecommunications system "was improper for failure to meet the definition of taxable property" under AS 43.56).

this clear statutory requirement because if an administrative taxability appeal were later successful, the assessment roll would then have to be altered after June 1, in direct tension with this statutory prescription.

## 2.    Common usage of the term "assessment"

When interpreting a statute, we construe its language " 'in accordance with [its] common usage,' unless the word or phrase in question has 'acquired a peculiar meaning, by virtue of statutory definition or judicial construction.' "[83]  As mentioned earlier, the term "assessment" is not defined in AS 43.56, and we have not ruled on its meaning.  Nor is "assessment" defined in AS 29.45, which governs municipal taxation.[84]  A diligent search of the Alaska Statutes reveals there is no definition for the term "assessment" in the context of property taxation in the entirety of the code.

But we can also rely on both dictionaries and texts in the field of property assessment in order to ascertain the meaning of "assessment."[85]  The edition of *Black's Law Dictionary* in existence at the time of the drafting and enactment of AS 43.56 defines "assessment" generally as "the process of *ascertaining* and adjusting the shares respectively to be contributed by several persons towards a common beneficial object

---

[83]     *Municipality of Anchorage v. Suzuki*, 41 P.3d 147, 150 (Alaska 2002) (alteration in original) (quoting *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 788 (Alaska 1996)).

[84]     *See* AS 29.45.

[85]     *See Alaskans for Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 276 n.4 (Alaska 2004) ("Dictionaries provide a useful starting point for determining what statutory terms mean, as they provide the common and ordinary meaning of words."); *Parris-Eastlake v. State, Dep't of Law*, 26 P.3d 1099, 1103 (Alaska 2001) (consulting a treatise in order to ascertain the scope of a statutory term).

according to the benefit received."[86] And it defines "assessment" specifically for the purposes of property taxation as "[t]he *listing* and valuation of property for the purpose of apportioning a tax upon it."[87] Both definitions contemplate the scope of the term "assessment" as including not just the assigning of value to a piece of property but also the initial identification of that property as eligible for taxation.

Texts written by those who work in the field of property assessment also consider a determination of taxability to be an integral component of "assessment." As the superior court noted in its order, "[d]eterminations that property is taxable [are] a necessary step routinely undertaken by municipal boards of tax equalization nationwide as reflected in standard texts on assessment processes." One such text defines "assessment" with respect to property taxation as "the official act of *discovering*, listing, and appraising property, whether performed by an assessor, a board of review, or a court."[88] Another text describing the assessment process and the tasks of assessors includes the initial step in the process of "[l]ocating and identifying all taxable property in the jurisdiction."[89] These definitions indicate that "assessment," as the term is commonly used, includes the step of an initial determination that a property is taxable.

---

[86] *Assessment*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968) (emphasis added).

[87] *Id.* (emphasis added).

[88] INT'L ASSOC. OF ASSESSING OFFICERS, GLOSSARY FOR PROPERTY APPRAISAL AND ASSESSMENT 11 (2d ed. 2013) (emphasis added).

[89] INT'L ASSOC. OF ASSESSING OFFICERS, PROPERTY APPRAISAL AND ASSESSMENT ADMINISTRATION 18 (Joseph K. Eckert ed.,1990)

### 3.      The significant consequences of Revenue's interpretation

By bifurcating the review process for valuation appeals from that for taxability appeals, Revenue's interpretation of the statute changes the standard of review that the superior court affords to the administrative decision below on the issue of taxability.  The statute explicitly affords a property owner or municipality appealing a decision by SARB a right to a trial de novo in the superior court.[90]  We have rejected attempts by the superior court to limit the scope of discovery in such appeals, and we have interpreted the right to a trial de novo on appeal from SARB decisions to include the standard discovery rights under the Alaska Civil Rules.[91]  The trial de novo thus affords the appealing property owner or municipality an opportunity for full discovery, motions practice, and time to resolve any objections it has to SARB's determinations.  And if the superior court's decision is further appealed to this court after a trial de novo, we review only the superior court's decision, not SARB's decision.[92]

In contrast, under Revenue's interpretation, a property owner or municipality appealing a taxability decision by Revenue to the superior court has no such statutory right to a trial de novo.  Rather they are limited to an administrative appeal in

---

[90]      AS 43.56.130(I).

[91]      *See Fairbanks N. Star Borough v. BP Pipelines (Alaska) Inc.*, No. S-13150 (Alaska Supreme Court Order, Aug. 27, 2008).

[92]      *See BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 325 P.3d 478, 482 (Alaska 2014).

which the decision to grant a trial de novo is left to the discretion of the superior court judge.[93] We have stated that such discretionary de novo review "is rarely warranted"[94] and is generally limited to review of due process violations at the agency level.[95] If the property owner or municipality is not granted a discretionary trial de novo on a taxability claim, the superior court's review of Revenue's decision will be limited to the record on file with Revenue and will be deferential to Revenue's findings.[96] It is unlikely the legislature would have intended for these serious consequences to arise from a distinction not provided for in the text of the statute, and we are accordingly wary of adopting Revenue's interpretation.

While AS 43.56's plain text is silent on the scope of the term "assessment," the text of the overall statutory scheme, the common usage of the term "assessment" in the property taxation context, and the significant consequences of Revenue's interpretation of the statute lead us to conclude that the statute's text indicates that "assessment" encompasses the initial taxability determination.

---

[93] Alaska R. App. P. 609(b)(1). We review the decision of the superior court whether to grant a trial de novo under the very deferential abuse of discretion standard. *See S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 778 (Alaska 2007) (citing *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998)).

[94] *S. Anchorage Concerned Coal.*, 172 P.3d at 778.

[95] *See Pacifica Marine, Inc. v. Solomon Gold., Inc.*, 356 P.3d 780, 795 (Alaska 2015).

[96] Alaska R. App. P. 604(b)(1)(A); *see also Pacifica Marine*, 356 P.3d at 795.

**B.**  **Revenue's Interpretation Of "Assessment" Through Its Regulation Is Not Consistent With The Legislative History Of AS 43.56.**

"When interpreting a statute, we do not stop with the plain meaning of the text"; rather, "we apply a sliding scale approach, where '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[97]

The legislative history of AS 43.56 lends some support to the indication found in the plain text that Revenue's determination of the taxability of oil and gas property is part and parcel of the assessment process. The entirety of AS 43.56 was adopted during the first special legislative session held in the fall of 1973.[98] In a letter to the speaker of the house introducing the bill that would become codified at AS 43.56, then-Governor Egan explained that "[SARB] is created to serve the function of the local board of equalization" and that "[t]he manner of assessment and collection of the tax is similar to that provided for municipalities."[99] Under AS 29.45, which establishes the manner in which municipalities assess and collect tax, the municipality's governing body sits as a board of equalization when hearing appeals from municipal tax assessments.[100]

---

[97]  *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012) (alteration in original) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

[98]  *See* Ch. 1, §1, FSSLA 1973.

[99]  1973 House Journal 41.

[100]  AS 29.45.200(a).

These municipal boards of equalization routinely hear both valuation and taxability appeals.[101]

The State notes that, while municipal boards of equalization do often hear taxability appeals, such appeals may also be brought directly to the superior court.[102] The State argues that because municipal boards of equalization do not have exclusive jurisdiction over taxability appeals, neither should SARB be understood to have such exclusive jurisdiction. But municipal boards of equalization *do* have exclusive jurisdiction over taxability appeals at the administrative level; the statute does grant property owners the right to appeal taxability determinations directly to the superior court, but grants the board of equalization exclusive jurisdiction over such appeals at the administrative level. This is consistent with SARB having exclusive jurisdiction over taxability appeals at the administrative level, after Revenue issues an informal conference decision, and the statutory grant to property owners and municipalities of a right to appeal SARB's determination to the superior court for trial de novo.[103]

Finally, the legislature, rather than contemplating a bifurcated process for AS 43.56 appeals when drafting the bill that would become AS 43.56, emphasized the virtue of condensing power to hear such appeals in a single entity. The committee

---

[101]     *See, e.g.*, *Ketchikan Gateway Borough v. Ketchikan Indian Corp.*, 75 P.3d 1042, 1044 (Alaska 2003) (reviewing a decision of the borough's municipal board of equalization determining that only 60 percent of a property was tax exempt); *N. Slope Borough v. Puget Sound Tug & Barge*, 598 P.2d 924, 926 (Alaska 1979) (reviewing decision of the borough's board of equalization that sea vessels trapped in ice within the borough were subject to property taxes).

[102]     *See* AS 29.45.200(c) ("[A] determination of the assessor as to whether property is taxable under law may be appealed directly to the superior court.").

[103]     *See* AS 43.56.130(i).

drafting the bill heard extensive testimony on the need for a uniform standard for assessment of oil and gas property,[104] and ultimately created only a single entity to hear appeals: SARB. It is exceedingly unlikely that the legislature intended to create a bifurcated appeal process without expressly doing so, particularly after hearing unrebutted testimony on the importance of uniformity.

The legislative history behind SARB's creation is not particularly extensive but it does reveal that the legislature modeled SARB after municipal boards of equalization and was aware of the importance of a uniform assessment process overseen by a single entity. These factors are both inconsistent with Revenue's interpretation of the statute.

## C. Revenue's Interpretation Of "Assessment" Is Not Consistent With The Purpose Of AS 43.56.

"The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[105] Accordingly, when engaging in statutory interpretation, we aim to "construe a statute in light of its purpose."[106] We will discuss two indicia of what the legislature intended

---

[104] *See, e.g.*, Minutes, H. Fin. Comm. Hearing on H.B. 1, 8th Leg., 1st Special Sess. (Oct. 22, 1973) (testimony of Homer L. Burrell, Director, Div. of Oil & Gas) ("[A]ssessment practices should be uniform throughout the state."); *id.* (testimony of Tom Brusard, Atlantic-Richfield Fiscal Tax Consultant) ("[T]he best way to [have some uniform standard of assessment] [i]s to have a single entity to assess those standards.").

[105] *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1178 (Alaska 1998) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987)).

[106] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007).

"assessment" to mean in AS 43.56: SARB decisions made nearly contemporaneously with the enactment of AS 43.56 and the compressed timeline that the legislature set forth in AS 43.56 for the resolution of appeals regarding assessments.

### 1. Prior SARB decisions

A decision by SARB nearly contemporaneous with the enactment of AS 43.56 provides further insight into the scope of the jurisdiction that the legislature intended to grant SARB, and thereby the scope it intended the term "assessment" to have.[107] In 1974, one year after the passage of AS 43.56 and the establishment of SARB, SARB issued an opinion addressing the scope of its jurisdiction.[108] In its arguments before SARB, the State argued that the question whether the Livengood-Yukon River Road was taxable under AS 43.56 was a question of law, falling outside of SARB's jurisdiction and within the exclusive jurisdiction of the judiciary.[109] SARB rejected this argument, concluding that issues of both taxability and valuation were part and parcel

---

[107]    *Cf. John v. Baker*, 982 P.2d 738, 811 (Alaska 1999) ("In determining a statute's meaning, courts will defer to the contemporaneous construction of the statute given by an agency charged with its administration. Contemporaneity of construction is important because often agency personnel have assisted in formulating the legislation and are thus knowledgeable of its intent and meaning." (footnotes omitted)); *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1247 (Alaska 1995) ("A 'contemporaneous and practical interpretation of a statute by the executive officer[] charged with its administration and enforcement . . . constitutes an invaluable aid in determining the meaning of a doubtful statute.' " (alteration and omission in original) (quoting 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 49.03 (5th ed. 1992))).

[108]    *Alyeska Pipeline*, No. 001-000-0015 (State Assessment Review Bd. Dec. 9, 1974).

[109]    *Id.* at 4-5.

of SARB's statutory directive to adjust the assessment roll if valuation was "excessive or improper."[110]

SARB concluded that "[t]he standards set forth in AS 43.56 include both taxability and valuation standards. To say that [SARB] must accept without question the taxability of a particular piece of property would prevent [SARB] from acting as an appella[te] agency and . . . would subvert the legislative intent in creating [SARB]."[111] SARB then went on to find that the road was not taxable under AS 43.56.[112] This opinion, issued one year after the passage of AS 43.56 and the creation of SARB, demonstrates that from its inception SARB understood its jurisdiction to extend to appeals on issues of taxability as well as valuation. Such nearly contemporaneous interpretations are reliable indicia of legislative intent and support the argument that "assessment" includes an initial determination of taxability.

While later SARB opinions are given less weight (than contemporaneous opinions) in interpreting AS 43.56, they nonetheless confirm SARB's initial interpretation of the scope of its jurisdiction. In many subsequent opinions SARB recognized and exercised its authority to decide taxability appeals from Revenue assessments.[113] As recently as 2008 SARB heard an appeal from Revenue's

---

[110]    *Id.* at 5.

[111]    *Id.*

[112]    *Id.* at 3.

[113]    *See, e.g.,* *Kodiak Oilfield Haulers, Inc.*, Nos. 86-56-7, 86-56-10, 86-56-11, 86-56-12, 86-56-13 (State Assessment Review Bd. May 22, 1986) (concluding that drilling machinery and equipment fell within the definition of taxable property under AS 43.56); *Parker Drilling Co.*, Nos. 85-56-04, 85-56-05, 85-56-06, 85-56-07 (State Assessment Review Bd. May 24, 1985) (concluding that drilling rigs and associated
(continued...)

determination that roads and bridges used to access TAPS infrastructure were not taxable.[114] SARB exercised its jurisdiction over this taxability appeal and concluded that the roads and bridges were taxable under AS 43.56 because this property "remain[ed] primarily dedicated to ongoing pipeline operations of . . . TAPS."[115] Only in more recent years has SARB abided by Revenue's interpretation of SARB's jurisdiction as extending only to valuation appeals.[116] But this new position does not obviate the fact that from its inception and for several subsequent decades SARB has understood its jurisdiction to encompass taxability appeals.

---

[113]     (...continued)
equipment constituted taxable property under AS 43.56); *Norpac Exploration Servs., Inc. v. Petroleum Revenue Div.*, No 84-56-07 (State Assessment Review Bd. May 1984) (concluding that certain pieces of drilling support equipment were not "taxable property" under AS 43.56 because they were not used for oil exploration or support purposes during the tax year); *Brinkerhoff Signal, Inc. v. Div. of Petroleum Revenue*, Nos. 83-56-4, 83-56-5, 83-56-6 (State Assessment Review Bd. May 31, 1983) (concluding that several drill rigs were taxable property under AS 43.56); *Alascom, Inc.* (State Assessment Review Bd. Mar. 31, 1981) (concluding that a segment of a telecommunications system did not meet AS 43.56's definition of "taxable property"); *Arctic Pipe Inspection, Inc. v. Div. of Petroleum Revenue, Dep't of Revenue, State of Alaska*, No. 80-2 (State Assessment Review Bd. May 21, 1980) (determining that equipment used to inspect pipe fell within AS 43.56's definition of "taxable property").

[114]     *Trans-Alaska Pipeline System*, No. 08-SARB-TAX at 21-22 (May 30, 2008), http://aws.state.ak.us/officeofadminhearings/Documents/TAX/PROP/ TAX08SARB%20TAPS.pdf.

[115]     *Id.* at 22.

[116]     *See, e.g.*, *Appeal from the 2009 Assessment*, OAH No. 09-SARB-TAX at 1 (May 21, 2009) (order staying appeal) ("Taxability issues are placed under the jurisdiction of [Revenue] [under the regulations].").

## 2.     The timeline set forth in the statute

The timeline that the legislature set for appeals of assessments provides further insight into its purpose in enacting AS 43.56.  As the superior court recognized, in AS 43.56 the legislature "set a compressed time frame from initial assessment through SARB appeal that accommodate[s] the rhythm of yearly tax collection."  First, Revenue must mail initial assessment notices by March 1 each year.[117]  An owner or municipality must then submit any objection to this initial assessment notice within 20 days of its effective date.[118]  If the property owner or municipality wishes to further appeal this assessment to SARB, it must do so within 50 days of the effective date of the initial assessment notice.[119]  SARB must then issue a final decision within seven days of holding a hearing on the appeal.[120]  Finally, by June 1 of each year, Revenue must certify the final assessment roll and mail final assessments to property owners.[121]  Thus in the timeline established by the legislature, all appeals from AS 43.56 initial assessment notices issued under AS 43.56 are to be resolved at the administrative level within approximately three months, by no later than June 1 of each year.

In contrast to this compressed timeline the legislature established for appeals to SARB, the process for taxability appeals before Revenue can take years for

---

[117]     AS 43.56.100.

[118]     AS 43.56.110(a).

[119]     AS 43.56.120(a).

[120]     AS 43.56.130(g).

[121]     AS 43.56.135.

a final judgment to be rendered.[122]  This lengthy process for taxability appeals before Revenue is not only contrary to the expedited timeline the legislature set out for appeals before SARB, but it can also prevent valuation appeals before SARB from being decided in the timely manner prescribed by the legislature.  Several valuation appeals before SARB have been stayed pending resolution of taxability appeals being heard before Revenue.[123]  These delays directly contravene the accelerated administrative appeal process for oil and gas property assessments set forth by the legislature in AS 43.56, with the goal of the assessment process being completed on an annual basis.  Revenue has thus promulgated a regulation that allows it to circumvent the strict statutory deadlines for completing administrative appeals under AS 43.56.  And, as Valdez argues, the current lengthy process for taxability appeals before Revenue has grave financial

---

[122]     For example, as recounted by a 2013 superior court decision on a taxability appeal by Valdez, Valdez first appealed certain taxability determinations in 1997, but these claims languished in administrative proceedings for many years and did not receive a final judgment from the superior court until late 2013, approximately 16 years after they were initially raised.  *City of Valdez v. State, Dep't of Revenue*, Nos. 3VA-00-00022 CI, 3VA-10-00084 CI, 3AN-11-07874 CI (consol.) (Alaska Super., Nov. 18, 2013).

[123]     SARB has issued inconsistent decisions regarding whether valuation appeals proceeding before it should be stayed pending the outcome of taxability appeals before Revenue. *Compare Trans-Alaska Pipeline Sys.*, OAH No. 13-0474-TAX at 2 (State Assessment Review Bd. May 1, 2013) (order denying motion to stay valuation appeal) ("[T]he valuation appeal and the taxability appeal can continue simultaneously on two separate tracks.")*, with Brooks Range Petroleum Co.*, OAH No. 14-0587-TAX at 2 (State Assessment Review Bd. May 2, 2014) (order staying valuation appeal) ("[Revenue] should retain the appeal until all questions of taxability are resolved.").

implications for affected municipalities because they must refund overpayments of taxes to taxpayers at eight percent interest[124] and must plan annual budgets without knowing their expected tax revenue.

### 3.     Summary

In sum Revenue's interpretation of AS 43.56 through its regulation is inconsistent with the statute's text, legislative history, and purpose.  This renders the challenged regulation invalid because it has no reasonable basis in the statute and thus falls outside of Revenue's statutory authority.[125]

## V.     CONCLUSION

We therefore REVERSE the superior court judgment and REMAND for entry of judgment in favor of the City of Valdez.

---

[124]     AS 29.45.500(a)-(b).

[125]     *See McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981) ("Administrative agencies rest their power on affirmative legislative acts.  They are creatures of statute and therefore must find within the statute the authority for the exercise of any power they claim." (citing 1 AM. JUR. 2D *Administrative Law* § 70 (1962)).